[Civ. No. 21542. Second Dist., Div. Two. Oct. 11, 1956.]

CASSIE BARTLETT et al., Appellants, v. STATE OF CALIFORNIA et al., Defendants; B. R. CALDWELL, as Commissioner of Department of California Highway Patrol, et al., Respondents.

Wolford, Johnson & Pike and George Pike for Appellants.

Edmund G. Brown, Attorney General, and Delbert E. Wong, Deputy Attorney General, for Respondents.

MOORE, P. J.—Appellants demand a reversal of a judgment of dismissal pursuant to an order sustaining a demurrer to the amended complaint without leave to amend as to respondents Caldwell and White. The pleading attempts to declare causes of action for personal injuries against departments of the state government and against Caldwell and

White, respectively Commissioner of the California Highway Patrol and Captain of such Patrol in the Seventh Area. The injuries of appellants resulted from an intersectional collision of two automobiles of one of which they were occupants. Such vehicle was operated by appellant Alfred Bartlett along Fawcett Street, an east-west county road and public street, and onto Rosemead Boulevard, a north-south state highway. Appellants assert the liability of respondents by virtue of their failure to maintain a stop sign at Rosemead where it is entered by Fawcett; that by reason of the absence of such stop sign, the driver of the Bartlett car failed to discern the nature of the state highway; that on the day of the accident, December 22, 1953, and since about 1936, a stop sign had been provided for such intersection according to law and had been erected by or on behalf of Los Angeles County; that after it was placed, it was ''maintained and cared for and controlled by each and all of said persons and governmental bodies named defendants herein, at the westbound (as well as the eastbound) approaches of Fawcett to Rosemead Boulevard, so as to require vehicular traffic westbound upon Fawcett to stop at the edge of Rosemead on Fawcett before entering Rosemead Boulevard''; that at the time of the accident and for several prior years, Rosemead, at the Fawcett intersection and at others for miles north and south of Fawcett, was a major traffic artery and through highway with stop signs at the entrances of all such intersecting streets and highways; that during all such times and especially at night, the conditions at the intersection of Rosemead and Fawcett were such as to require, in the exercise of ordinary care, the maintenance of a stop sign at the westbound entrance of Fawcett onto Rosemead to give warning of the danger of traffic on Rosemead and render such entrance safe for passage of vehicular traffic along Fawcett into Rosemead; that the ''natural growth along Fawcett at the southeasterly corner of the intersection, obscuring the vision of a westbound driver to the customarily rapid approach of northbound traffic nearest said intersection'' reasonably required the maintenance of a stop sign at Fawcett's entrance to Rosemead; ''that Fawcett at such intersection in the absence of such a stop sign was rendered thereby unsafe dangerous and defective.''

''IX

''That said stop sign at the westbound approach for westbound traffic on Fawcett approaching Rosemead was the joint, or in the alternative several, jurisdiction and responsibility of

the Department of Public Works, Division of Highways and the officers and employees herein, named thereof, and of the County of Los Angeles, and of the Department of the California Highway Patrol and the division officers and employees thereof named herein, with reference to and as to the replacement, maintenance, care, control and condition of said signs thereof. That each and all of the persons named herein and the governmental bodies had the duties to replace, maintain, inspect, care for, and control said two highways, their intersection and approaches, and the stop signs in place, and in a safe condition for their intended use, and furthermore had the duty with reference to the instruction, regulation and operation of the means and methods of carrying out such erection, maintenance, inspection, control and condition thereof, and with reference to the reporting of missing stop signs and of dangerous and defective highway by reason of the condition of the approaches and stop signs thereof, and with reference to the replacement and repair of said stop sign at said approaches.

"That the County of Los Angeles at all such times had the duty to maintain said Fawcett in a safe condition for its intended use, and to remedy the dangerous and defective condition of Fawcett by reason of its approach into Rosemead as herein alleged and to give warning of said dangerous and defective condition.

"That the Department of the California Highway Patrol on said date and for a long period of time theretofore had the duty, and customarily assumed the working practices and duty, of reporting missing stop signs or damaged stop signs, and either replacing same or requesting the Department of Public Works Division of Highways of California, or the County of Los Angeles, or a municipality under the particular circumstances to replace missing stop signs and otherwise to remedy and give warning to the public of the dangerous and defective conditions claimed by said missing stop sign.

"X

"On December 22, 1953, and for three months, or more prior thereto, the previously erected and maintained stop sign at the westbound approach for westbound traffic, along Fawcett to Rosemead was displaced and missing and not at all in position, so that no warning or notice to stop or warning of the dangers of the through highway, with its usual heavy rapid traffic, not otherwise ordinarily visible without stopping was given in any wise to drivers of traffic proceeding westerly

along Fawcett approaching and entering into Rosemead. That on said date the plaintiffs were all occupants of an automobile being driven by the plaintiff Alfred Bartlett in a westerly direction along Fawcett, who was by the absence of the stop sign caused to enter said intersection into Rosemead and to come into collision with a northbound vehicle along Rosemead Boulevard, without stopping for said boulevard, and by reason of said collision each and all of the plaintiffs were seriously permanently and painfully injured and caused to suffer damages as herein alleged.

"That the absence of said stop sign and conditions rendering Fawcett and Rosemead dangerous and defective, as herein alleged, were open and obvious and easily known to the persons complained of and the County of Los Angeles from any routine inspection of the intersection and of stop signs, which routine inspections were regularly carried out by and under the authority of the officers and employees complained of and the County of Los Angeles; and the exercise of ordinary care in the inspection of said stop signs and of the intersection would have caused actual knowledge of said dangerous and defective condition of the property.

"That in fact at the El Monte offices of the California Highway Patrol where Captain Richard White was located, there was a displaced and missing stop sign for a period of several weeks prior to the collision, which in reasonable probability was the one previously in place at said intersection.

. . . . . . . . . . . . .

"That each and all of the officers and employees herein named as defendants had notice, either actual or constructive, of the defective and of the dangerous condition of said public property and each and all of it herein described, and had the authority and the duty to remedy such condition at the expense of the political and governmental body responsible therefor, and funds for the purpose were immediately available to each and all of such persons, and within a reasonable time after receiving such notice, and being able to remedy such condition, they failed so to do, and furthermore failed to take reasonable steps to give adequate warning of such dangerous and defective condition of the stop sign and the public highways and approaches thereto, and of the public property herein described."

From the foregoing it should be patent that no liability on the part of respondents exists in favor of appellants. If such be true, the court below properly sustained the de-

murrer without leave to amend. (*Bauer* v. *County of Ventura*, 45 Cal.2d 276, 291 [289 P.2d 1]; *Routh* v. *Quinn*, 20 Cal.2d 488, 493 [127 P.2d 1, 149 A.L.R. 215]; *Saint* v. *Saint*, 120 Cal.App. 15, 23 [7 P.2d 374].)

The determination of the point raised by the appeal appears to rest largely with the interpretation of section 1953\* of the Government Code which appears on the margin hereof. Because that section had its genesis in the Statutes of 1919, chapter 360, section 1 (which chapter was a reenactment of Stats. 1911, § 1, ch. 593) the decisions construing the earlier statutes are persuasive here. The Act of 1911 was not enacted to create a liability of public officers for negligence in the performance of their duties beyond existing liability. (*Ham* v. *County of Los Angeles*, 46 Cal.App. 148, 164 [189 P. 462].) Inasmuch as respondents' liability is restricted by the limitations prescribed by section 1953, a valid pleading against such officers requires strict compliance therewith. (*Shannon* v. *Fleishhacker*, 116 Cal.App. 258, 261-262 [2 P.2d 835, 3 P.2d 1020].)

Because the amended complaint does not definitely show that either respondent had the authority to restore the stop sign and that they had the requisite funds available to them from the State or any of its political subdivisions (§ 1953, *supra*), it does not state a cause of action against them.

While it is true that the pleading states fully that respondents knew of the dangerous condition at the intersection

---

\*Gov. Code, § 1953. Liability of officer for damage or injury from defective or dangerous condition of public property.

"No officer of the State or of any district, county, or city is liable for any damage or injury to any person or property resulting from the defective or dangerous condition of any public property, unless all of the following first appear:

(a) The injury sustained was the direct and proximate result of such defective or dangerous condition.

(b) The officer had notice of such defective or dangerous condition or such defective or dangerous condition was directly attributable to work done by him, or under his direction, in a negligent, careless or unworkmanlike manner.

(c) He had authority and it was his duty to remedy such condition at the expense of the State or of a political subdivision thereof and that funds for that purpose were immediately available to him.

(d) Within a reasonable time after receiving such notice and being able to remedy such condition, he failed so to do, or failed to take reasonable steps to give adequate warning of such condition.

(e) The damage or injury was sustained while such public property was being carefully used, and due care was being exercised to avoid the danger due to such condition."

of Fawcett Street and Rosemead Boulevard by reason of the absence of the stop sign at the northeast corner, yet the danger alone is not sufficient to make a police officer liable for injuries resulting from the absence of the stop sign. Unless they had the authority to repair the condition and the funds requisite for such performance, a valid cause of action was not alleged against them. (*Hoel* v. *City of Los Angeles,* 136 Cal. App.2d 295, 306 [288 P.2d 989].) If respondents continued to perform their regular duties but neglected to notify the Public Works' officers of the absence of the stop sign and of the resultant danger to the public, they would have been properly subject to discipline by the constituted authority for such neglect. But the entity liable for the presence of such a dangerous condition on a street or highway is the sovereign of such political subdivision as has been authorized to repair conditions defective or dangerous.

Appellants contend that respondents assumed the responsibility of maintaining the stop signs in order and repair and thereby rendered themselves liable for the continued existence of the danger after having knowledge thereof. Such assumption is not justified by either reason or authority. Because an agent goes out of his way to do a good turn for his principal does he thereby assume the duty forever to do so? Because a policeman has for a season conveyed every drunk found on the streets after midnight to the latter's home, is he thereafter liable for the death suffered by an intoxicated man who was allowed to care for himself after midnight with the resultant fall into a manhole? An officer's kindness to the individuals of society will not reasonably enlarge his duties as prescribed by law, even though he has power to ''direct traffic as conditions may require.'' (Veh. Code, § 139.37, subd. (b).)

. Appellants argue that regardless of whether or not a cause of action may be stated against the officers under the applicable provision of the Government Code, a right to relief was alleged against them as individuals for breach of a general duty to exercise due care for the safety of others, citing *Bettencourt* v. *State,* 139 Cal.App.2d 255 [293 P.2d 472]; *Griffin* v. *Colusa County,* 44 Cal.App.2d 915 [113 P.2d 270]; *Dillwood* v. *Riecks,* 42 Cal.App. 602 [184 P. 35]. In the Bettencourt case, defendants negligently raised a bridge; in Dillwood the government employees carelessly burned weeds. However, in this case appellant is complaining of the inaction of the defendants. ■ Before any common-law liability for

failure to act may exist, there must have been a duty to act under the circumstances. (Rest., Torts, § 314.) ██ Furthermore, to prevail in their argument that a cause of action was stated against these defendants regardless of noncompliance with Government Code, section 1953, appellants must point out a duty to act which is not dependent upon the official status of respondent officers. In this they fail.

Appellants particularly seek to bring their pleading within the rule of *Griffin* v. *Colusa County, supra,* 44 Cal.App.2d 915, which held that two county nurses should have been held answerable for their negligence in failing to care for a patient who had fallen into a delirium. The duty to act was predicated upon the principle that when one undertakes the care of the helpless he must do so with due care while the other is under his charge. (Rest., Torts, § 324.) However, the facts alleged indicate no such assumption of personal care here. The amended complaint is devoid of an allegation that respondents undertook to maintain the stop signs or to replace one and were negligent in their attempts.

### A Cause of Action Cannot Be Declared Against Respondents

If the power and duty to erect and maintain stop signs at intersections of a state highway deemed to be dangerous is vested in the Public Works Department of the state and in local authorities with respect to streets and highways within their jurisdictions (Veh. Code, §§ 465, 471), there is no reason for assuming that the same power is vested in the Highway Patrol. There is no statutory authority so declaring, neither is there cited any judicial declaration to that effect. It is so clear that the State Department of Public Works is obligated to maintain stop signs at dangerous intersections of a state highway that one who runs may read. It is equally certain that local political subdivisions must maintain such signs on their own streets and highways. But appellants seek to extend the state's obligations to the personnel of the state's Highway Patrol and especially to respondents, members of such patrol. At least, it is contended, the officers of the patrol "had the duty, and customarily assumed the working practice and duty of reporting missing stop signs or damaged stop signs" and either replacing same or requesting the appropriate governmental personnel to replace them or otherwise to remedy and warn the public of such conditions. In support of such contention, appellants cite *Gillespie* v. *City*

*of Los Angeles,* 36 Cal.2d 553 [225 P.2d 522]. However, it was there pointed out that in that case as well as in the case of *Rose* v. *County of Orange,* 94 Cal.App.2d 688 [211 P.2d 45], ''the city or county had authority at least to warn of the dangers. They had control of their own highways and authority therefore to post warnings along those highways of the dangers created by conditions contiguous thereto.'' (*Gillespie* v. *City of Los Angeles, supra,* at 557.) ▮ Now, if the officers of Highway Patrol have no control over the maintenance of state highways, they have no duty to post warnings of the presence of dangerous conditions on Rosemead Boulevard. They have no such duty; therefore, they were free from negligence in not maintaining or restoring absent stop signs at the intersection of county roads with such state highway.

Section 473 of the Vehicle Code merely authorizes officers of the highway patrol to remove unauthorized signs, signals or lights, but does not require them to erect or maintain authorized signs. The nearest approach to authority placing responsibility upon the Highway Patrol to restore missing stop signs is Streets and Highways Code, section 127. But that merely requires the patrol to cooperate with the Department of Public Works in the enforcement of the closing or restriction of the use of any street or highway. While it is true that it has been held (*White* v. *Towers,* 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636]) that duties of public office include (1) those lying squarely within its scope, (2) those essential to the accomplishment of the main purposes of the office and (3) those incidental to a proper fulfillment of the office which serve to promote its principal purpose, yet such holding refers merely to the scope of activities in which a public officer may engage while in the performance of his own duties and still be immune against civil liability for malicious prosecution. The granting of such immunity is to encourage officers in the performance of their duties. To impose civil liability upon members of the Highway Patrol for failure to maintain stop signs in the absence of a statutory duty to do so would be calculated to hinder them in the performance of their duties and to discourage their performance of clearly defined duties.

Inasmuch as the statutes have expressly imposed upon the State Department of Public Works, and not upon respondents, the duty of maintaining state highways (Veh. Code, §§ 465, 471), it could not have been intended to require another

agency to do the same thing. Such requirement would not have been consonant with the doctrine of division of labors. Also, it would create a conflict of statutes and "lead to anomalous and unreasonable results." (*Gillespie* v. *City of Los Angeles, supra,* 36 Cal.2d 553, 559.) It cannot be that the Legislature could have intended to throw such an important field of activity into confusion as would result from the efforts of two coordinate agencies to discharge their duties over the same highway. To do so would have been to defeat the uniformity of the state highway system. (*Ibid.*)

## FUNDS AVAILABLE

 Appellants alleged that "each and all of the officers and employees herein named as defendants . . . [1] had the authority and the duty to remedy such condition at the expense of the political and governmental body responsible therefor, and [2] funds for the purpose were immediately available to each and all such persons."

No facts are alleged as a basis for the two conclusions. On the contrary, the facts of which the court takes judicial notice contradict the allegations. (*Griffin* v. *Colusa County, supra,* 44 Cal.App.2d 915, 918.) Inasmuch as the accident of appellants occurred December 22, 1953, it fell within the fiscal year 1953-1954. The budget for that year only may be consulted in order to ascertain whether the Legislature had set aside funds for the Highway Patrol to use in maintaining stop signs. No such provision appears from the Statutes of 1953 (chap. 971, p. 2348) or from the budget to have been made. The only item in the budget for that fiscal year relating to signs is at line 69, page 829 and is the sum of $1,750,693.06 for safety devices and signs allocated to the Division of Highways of the Department of Public Works.

 It necessarily follows, then, that appellants cannot allege a cause of action against respondents under Government Code, section 1953, subdivision (c), for the reason that there were no funds available for them to use for the erection of stop signs. The entire pleading is founded upon liability for a dangerous condition of public property under section 1953, *supra.*

There was no error in sustaining the demurrer without leave to amend.

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.