[Civ. No. 10743. Third Dist. Oct. 19, 1964.]

DAVID WRIGHT, a Minor, etc., Plaintiff and Appellant, v. ARCADE SCHOOL DISTRICT et al., Defendants and Respondents.

Eissinger & Evans, Jones, Lamb, Jarboe & Boli and Donald L. Gilmour for Plaintiff and Appellant.

McGregor, Bullen & Erich and Donald McGregor for Defendants and Respondents.

FRIEDMAN, J.—Plaintiff, then a 5-year-old boy, was struck by an automobile while crossing a public street on his way to school. Through his guardian ad litem, he brought this negligence action against the automobile driver and the school district. At the completion of his trial counsel's opening statement, the court granted the school district's motion for nonsuit and plaintiff appeals.

A nonsuit following the plaintiff's opening statement should be granted " ' ' "only where it is clear that *counsel has undertaken to state all of the facts which he expects to prove*, and it is plainly evident that the facts thus to be proved will not constitute a cause of action." ' ' " (*Weyburn* v. *California Kamloops, Inc.*, 200 Cal.App.2d 239, 241 [19 Cal.Rptr. 357].) The record demonstrates that counsel for plaintiff anticipated the nonsuit motion and had thoroughly reviewed the law on school district liability. Asked by the trial judge whether he had anything to add to his statement,

he acknowledged with commendable frankness that his statement described the ultimate facts he was prepared to prove.

█ In this procedural context, the nonsuit should be affirmed if the opening statement omitted facts which, as a matter of law, were an indispensable condition of school district liability. (*Gallegos* v. *Union-Tribune Publishing Co.*, 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185].)

█ We summarize plaintiff's opening statement: David Wright was a 5-year-old boy attending kindergarten at the Howe Avenue School operated by defendant school district. The school was located on Howe Avenue 500 feet south of its intersection with El Camino. David lived on the other side of El Camino Avenue and had to cross the latter street en route between home and school. El Camino Avenue was a major traffic artery in the suburban area where the school was located. Peak flows of traffic occurred at 8 a. m., at noon, and at 5 p. m. each day. At these times kindergarten pupils crossed El Camino Avenue to reach school before and after morning or afternoon kindergarten sessions. The intersection was controlled by electric traffic signals. Prior to the date of David's injury other school children had been struck by cars at the intersection and nearby points on El Camino Avenue. School officials were aware of these accidents and instructed students, including David, to cross El Camino Avenue only at this particular intersection. At one time the school officials had maintained a school safety patrol to supervise pupils crossing the intersection. The safety patrol had been removed over the protests of a parents' organization. After removal of the patrol, the only method of traffic control was the electric traffic signal. While crossing El Camino Avenue on his way to school David was hit and seriously injured by an automobile driven by defendant Robert Busby. The accident occurred at about noon, one of the periods of peak traffic flow. The accident (according to counsel's statement) was caused by the negligent driving of Busby and by the negligence of the school district in failing to provide protection to David and other pupils.

█ An indispensable condition of negligence liability is a duty of care owed by the alleged wrongdoer to the injured person or to a class of which he is a member. (*Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 307 [29 Cal. Rptr. 33, 379 P.2d 513]; *Richards* v. *Stanley*, 43 Cal.2d 60, 63 [271 P.2d 23]; *Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 6 [31 Cal.Rptr. 847].)  █ Existence

of a duty of care is initially a question of law for determination by the court, although, when reasonable foreseeability of injury is involved, the latter element is a jury question. (See *Hergenrether* v. *East*, 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164]; *Richards* v. *Stanley, supra,* 43 Cal.2d at pp. 66-67.) The question before us is whether plaintiff's opening statement included provable facts demonstrating existence of a duty of care.

■ Failure to exercise care may manifest itself in the course of affirmative action (misfeasance) or in a failure to act (nonfeasance). One who voluntarily engages in affirmative action has a duty to use care in performing the assumed task. (*McGuigan* v. *Southern Pacific Co.,* 112 Cal.App.2d 704, 718 [247 P.2d 415].) ■ Ordinarily a failure to act does not amount to actionable negligence unless there is a duty to act emanating from some special relationship recognized by law. (*Kennedy* v. *Chase,* 119 Cal. 637, 640 [52 P. 33, 63 Am.St.Rep. 153]; *Toomey* v. *Southern Pacific R.R. Co.,* 86 Cal. 374, 381 [24 P. 1074, 10 L.R.A. 139]; *Bartlett* v. *State,* 145 Cal.App.2d 50, 56-57 [301 P.2d 985]; Rest., Torts, §§ 284, 314-315; Prosser on Torts (2d ed.) pp. 182-183; see also *Collenburg* v. *County of Los Angeles,* 150 Cal.App.2d 795, 803-805 [310 P.2d 989].) ■ Ordinarily, a person has no duty to take affirmative steps to protect another from harm emanating from a third person. (*Richards* v. *Stanley, supra,* 43 Cal.2d at pp. 65, 67.)

■ These general concepts of negligence law apply to school districts no less than private persons. Thus, in *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d at page 9, this court stated that a school district is under no legal duty to transport its pupils between home and school; but once it assumes that activity it is obligated to provide a reasonably safe system. (See also *Kerwin* v. *County of San Mateo,* 176 Cal.App.2d 304, 307 [1 Cal.Rptr. 437]; *Girard* v. *Monrovia City School Dist.,* 121 Cal.App.2d 737, 743 [264 P.2d 115].) ■ Similar considerations attend the protection of pupils at street crossings between home and school. A statute authorizes but does not require establishment of school safety patrols to assist pupils in crossing streets. (Ed. Code, § 12051.) Cities may spend traffic fine income to pay special school crossing guards. (Veh. Code, § 42200.) In unincorporated areas, utilization of county highway funds to pay pedestrian crossing guards furnished by the State Highway Patrol has been recognized. (17 Ops. Cal. Atty. Gen.

157.) Highway authorities may install flashing signals and specially paint crosswalks in proximity to schoolgrounds. (Veh. Code, §§ 21367, 21368.) These statutory expressions emphasize that safety protection at street crossings outside schoolgrounds is a municipal rather than school district function. (See also 24 Ops. Cal. Atty. Gen. 143.) Statutory duties and powers of school districts relative to the protection of pupils' health and safety are set out in the Education Code (see especially pt. 2, div. 9, §§ 11701-12081). Nowhere does the Education Code impose upon districts a statutory obligation to supply traffic protection to pupils en route between home and school.

In *Raymond* v. *Paradise Unified School Dist., supra,* we summarized the various factors which lead to imposition of a duty of care, as follows: "An affirmative declaration of duty simply amounts to a statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care toward the other. Inherent in this simple description are various and sometimes delicate policy judgments. The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; in the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget; and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty." (218 Cal.App.2d at p. 8.)

Since a finding of duty may rest upon judicially discerned demands of public policy, as well as legislative declarations (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d at pp. 308-309), the absence of statutory requirements for traffic protection of school pupils off the schoolgrounds is not completely determinative. Plaintiff strongly urges the dangerous character of the busy El Camino Avenue crossing, its close proximity to the school, the daily use of this crossing by the 5-year-old plaintiff and other children,

the district's knowledge of this condition, and the reasonable foreseeability of harm in the absence of a safety patrol or other preventive means—all these elements having been described in his trial counsel's opening statement. In effect, plaintiff seeks a judicial declaration of duty resting primarily upon the foreseeability of harm.

Foreseeability of harm is one, but only one, of the factors begetting a duty of care. Its role as a duty factor was painstakingly evaluated by Mr. Justice Schauer in the *Amaya* case, *supra,* 59 Cal.2d at pages 308-309, 315. Suffice it to say that there are many situations involving foreseeable risks where there is no duty. (*Richards* v. *Stanley, supra,* 43 Cal.2d at p. 66.) Obversely, there are some special situations in which the high potential of risk to the plaintiff, coupled with the ease of protective steps available to the defendant, have led the courts to expand the relative weight of the foreseeability factor and to diminish the other ingredients which normally compound that broth of elements called "duty." (See *Hergenrether* v. *East, supra,* 61 Cal.2d 440; *Richardson* v. *Ham,* 44 Cal.2d 772 [285 P.2d 269]; *Murray* v. *Wright,* 166 Cal.App.2d 589 [333 P.2d 111].)

Where the ultimate determination of duty rests upon the foreseeability of harm, it becomes a fact question for the jury rather than a law question for the court. (See *Hergenrether* v. *East, supra.*) The trial judge apparently decided that factors other than foreseeability precluded a duty. With that decision we agree. The school district's character as a public agency is particularly significant. As we noted in the *Raymond* case, the extent of a public agency's powers, the role imposed upon it by law and the limitations imposed upon it by budget are factors which peculiarly affect the obligation of care owed by public agencies. Thousands of California children walk to public schools in heavily congested urban areas and heavily traveled suburban districts, crossing streets and boulevards which carry varying degrees of automobile traffic. Some street intersections habitually crossed by pupils are signal controlled; others are not. School authorities decide whether or not to supply safety patrols at some of these intersections. Traffic officials decide whether to furnish crossing guards or to take other safety measures. The decisions of affected public agencies and officials turn in part on predictions of need and danger, in part on availability of personnel and funds. As stated in *Raymond* (218 Cal. App.2d at p. 10): "The sheer difficulty and expense of sup-

plying supervisory personnel may impose real limitations on accident prevention.'' The decisions so made are governmental decisions. Notwithstanding such decisions, accidents occur and pupils are injured. Some of these accidents are attributable to the negligence of motorists; others are not. Some of the pupils are sufficiently old to exercise a high degree of self-protection; others are younger and their self-protective abilities less well developed. Parents too exercise varying degrees of vigilance. Lawsuits occur and juries may be asked to decide whether the school authorities should have reasonably foreseen the likelihood of an accident at a particular crossing under particular conditions. Submitting such a question reposes in the jury an ''after the fact'' decision, approving or rejecting accuracy of the school authorities' prediction of harm and the reasonableness of their governmental decision to confer or withhold a protective service. That concept would require school districts, at their financial peril, to make a profuse series of advance decisions for or against guarding street intersections throughout the district. Imposition of such a heavy responsibility is a matter of legislative policy and should not lie with juries. It ''is not a tort for Government to govern'' and these governmental decisions of school districts within the scope of delegated powers are nontortious. (See *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 220 [11 Cal.Rptr. 89, 359 P.2d 457], quoting Jackson, J., in *Dalehite* v. *United States*, 346 U.S. 15, 57 [73 S.Ct. 956, 979, 97 L.Ed. 1427, 1452].)

True, negligence liability of school districts is not limited to accidents on schoolgrounds. (*Lehmuth* v. *Long Beach Unified School Dist.*, 53 Cal.2d 544, 551 [2 Cal.Rptr. 279, 348 P.2d 887].) In *Satariano* v. *Sleight*, 54 Cal.App.2d 278 [129 P.2d 35], a high school gymnasium and the school athletic field were separated by a public street. The plaintiff student was crossing from the gymnasium to a physical education class when struck by an automobile. A nonsuit granted to the school district was reversed on appeal. Observing that students crossing the street were simply passing from class to class during school hours, that ''in a sense'' the street became an extension of the schoolgrounds, the appellate court held that a jury question existed. *Satariano* represents an exceptional situation in which a duty to take protective measures extended beyond the technical confines of school property. It is in no sense an influential precedent where the accident results in injury to a pupil en route between home and school.

There was no claim on counsel's part that the safety patrol

formerly provided at the accident intersection had been in existence during David's attendance at the school; or that David and his parents had been led by prior conduct to rely upon an expectation of protection at the crossing. (See *Teall* v. *City of Cudahy,* 60 Cal.2d 431, 434 [34 Cal.Rptr. 869, 386 P.2d 493]; Rest., Torts, § 325; Seavey, *Reliance Upon Gratuitous Promises or Other Conduct,* 64 Harv.L.Rev. 913, 915; 2 Witkin, Summary of Cal. Law, p. 1437.) ▇ Essentially, plaintiff's opening statement described a claim of tort liability for negligent failure to take protective action, but without any facts justifying imposition of an affirmative duty to act. The description thus lacked a vital element of actionable negligence and the school district's nonsuit motion was properly granted.

▇ A comment is in order, linking this decision with current statutory law on governmental tort immunity. The accident in suit occurred in 1959. At that time Education Code section 903, imposing negligence liability on school districts, was in force. It was repealed by 1963 legislation which dealt comprehensively with tort liability of public entities and public employees. (Gov. Code, §§ 810-895.8; Stats. 1963, ch. 1681.) Such legislation "applies retroactively to the full extent that it constitutionally can be so applied." (Stats. 1963, ch. 1681, § 45, subd. (a).) Under this legislation public employees and public entities are exempted from liability for acts or omissions resulting from the exercise of discretion. (Gov. Code, §§ 815.2, 820.2.) The discretionary nature of defendant school district's decision to withhold or confer crossing guard protection at the El Camino Avenue intersection stood revealed, as a matter of law, from the opening statement of plaintiff's trial counsel. It was not a circumstance which had to await demonstration by the defense. (Cf. *Teall* v. *City of Cudahy, supra,* 60 Cal.2d at p. 435.) Thus, the nonsuit would be sustained by application of the 1963 legislation as well as by the "common law" approach which we have adopted.

Judgment affirmed.

Pierce, P. J., concurred.

MOOR, J. pro tem.*—I dissent:

The majority opinion finds no duty of care to be owed by the school district to the injured child because, among other

---

*Assigned by Chairman of Judicial Council.

reasons, it has no legal duty to transport pupils between home and school, there is no specific statutory authority or requirement that it supply traffic protection to pupils en route between home and school; also, that there are specific statutes authorizing cities, unincorporated areas and state highway authorities to expend certain funds for the payment of crossing guards, the installation of flashing signals and the painting of crosswalks in the proximity of the school ground; and finally, by inference, that only the parents owe a duty of care to the child at this time and place.

From this it concludes that it was not intended that any liability or responsibility should rest upon the school district, particularly if it has not undertaken any of the procedure authorized for the safety of their pupils off school grounds. But beyond this, I believe the majority opinion is more concerned with the fact that to hold that the district had a duty of care might establish a policy requiring school districts to establish crossing protection for students at every street crossing between the home of every student and the school.

It is not necessary that in finding or establishing a duty of care on the part of the school district in this case that such a result be reached. We are dealing here with special circumstances as the words ''special circumstances'' are used in *Hergenrether* v. *East,* 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164]. The special circumstances are these: Plaintiff, David Wright, is a 5-year-old boy attending kindergarten at the Howe Avenue School. State law makes it mandatory that David attend this particular school and he was *directed by those in charge of the school to cross at the intersection where he was injured.* The intersection is on a major traffic artery with peak flows of traffic at the hours when the kindergarten children were required to cross. The intersection was controlled by electric traffic signals, traffic signals which a child of 5 years might or might not comprehend. Other children have been struck and injured by automobiles at this intersection and on El Camino Avenue. The intersection was within 500 feet of the schoolground. The school authorities had full knowledge of the situation, and prior to the accident had maintained a school safety patrol to supervise pupils crossing the intersection. This traffic patrol had been removed over the protest of a parents' organization.

I find it most easy to fit these special circumstances into the framework of the definition of duty contained in *Raymond* v. *Paradise Unified School Dist., supra* (quoted in the

majority opinion herein). Let us lay the admitted facts alongside the definition of duty contained in *Raymond* v. *Paradise Unified School Dist., supra* (quoted in the majority opinion herein) : ''An affirmative declaration of duty simply amounts to a statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care towards the other. Inherent in this simple description are various and sometimes delicate policy judgments. The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; . . .'' (I think it will be conceded that the social utility of the activity out of which the injury arises, namely, the operation of a kindergarten at the particular time and place, is undeniably beneficial compared with the risks involved in its conduct.) The kind of person is a 5-year-old boy attending kindergarten who belongs to that special class of person requiring a high degree of care. ''[T]he amount of care due to minors increases with their immaturity.'' (*Satariano* v. *Sleight*, 54 Cal. App.2d 278, 283 [129 P.2d 35].) ''So, in all logic, do the occasions for care.'' (*Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 10 [31 Cal.Rptr. 847].)

*The workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury.* The crossing at which David was injured was apparently the narrow neck of the funnel of the children's traffic to the school and existed within view of the school and with the knowledge on the part of the school that these kindergarten children would have to cross at this point in order to reach the school. In fact, *they had been directed by the school authorities to cross at this point.* The school had full knowledge that the crossing was dangerous and that children had been injured in traffic at the crossing. It may be possible, or it may not be possible, for the parent of every child to conduct the child across this intersection to the school. However, the relative ability to adopt practical means of preventing injury at *this* crossing rests with the district by creating some form of patrol at the two critical but short periods of time during the day.

*The relative ability of parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread.* Given the foregoing conditions, the school district has a greater relative ability to bear the financial burden of the injury to the child by spreading it over the

entire district than to place the burden upon the innocent child or the parents who may not have the financial means to bear the cost of expensive repairs to a seriously injured child.

*The body of statutes and judicial precedents which color the parties' relationship.* The body of the statutes and judicial precedents involved in this situation clearly indicate that it is contemplated that the school district will reach out beyond the boundaries of the schoolground and transport or conduct pupils to the schoolground and also maintain safety patrols at crossings, so that the idea of the extension of the responsibility of the school district beyond the schoolground in itself is not reprehensible, nor does it introduce a new legal concept. The difference being that in one instance the school assumes the duty and if in some manner it fails in its duty, liability is imposed. In the present instance, liability would be imposed upon the school district for failing to exercise that care, when in good conscience it has the ability to do so and ought to act, but fails to do so.

*The prophylactic effect of a rule of liability.* The imposition of this duty on the school board would insure and compel the school districts to act in those instances where the problems of the safety of kindergarten children are *obvious* and *acute.*

*In the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget.* If, as has been pointed out above, the safeguarding of children on their way to and from school is a permissive thing created by statute, it is within the legal powers of the school. The limitations imposed upon it by budget relate to the financial ability of a district to provide adequate crossing protection at two short periods of the day. It is not conceivable that meeting this condition would impose a serious financial burden upon the budget of the district.

*And finally, the moral imperatives which judges share with their fellow citizens.* I cannot willingly concur with any rule of law which would permit a school district, under the facts here stated, to deny that it owes a legal duty of care to a 5-year-old child attempting to cross a dangerous intersection, which is literally at the front door of the school, with the knowledge the district had of the past bad experiences at that crossing and the present existing danger. The more so, when the child and the parents of the child have been directed to use that crossing. This direction was given for some purpose. Obviously it was intended to be complied with. And if the school has the authority to direct which crossing the

child must use, then it follows that it must assume some of the responsibility for what occurs when the child carries out the direction of the legal body with which the child would stand in loco parentis for the greater portion of its day.

The majority opinion dismisses the fact that the district had formerly maintained a safety patrol at the intersection and had removed it over the protest of a parents' organization, by saying that plaintiff's counsel did not spell out that David and his parents had been led by this prior conduct to rely upon an expectation of protection at the crossing. The fact that the school district had maintained a safety patrol at this crossing prior to David's accident bears heavily on the determination of whether the district owed a duty of care to David, and it was equally important in determining whether or not the district in having assumed the duty of providing this care was negligent in abandoning it. If the plaintiff were permitted to develop all the facts, it might be clear that the removal of the safety patrol took the district out of that category of no duty where no action taken, which the majority opinion finds, to the category of action taken in the field of safety and improperly carried out. These are the reasons why the case should have been permitted to go to the jury. I would deny the motion for nonsuit.

Education Code section 903 imposing negligence liability on school districts was in force at the time of this accident in 1959. This section was repealed by Statutes of 1963, chapter 1681 (Gov. Code, §§ 810-895.8), which legislation "applies retroactively to the full extent that it constitutionally can be so applied." (Stats. 1963, ch. 1681, § 45, subd. (a).)

This issue was not presented nor argued at the time of the granting of the motion for nonsuit and comes to this court without either briefing or argument on the point. The vital constitutional question involved has thus not been properly presented to the court; and it cannot be said upon such scanty authority as is presented in the majority opinion, that the plaintiff does not have a vested right to proceed to recover for the detriment caused him by the negligence of the defendant district and of which he may not be constitutionally deprived. There is no basis for sustaining the granting of the motion on these grounds. (*Palermo* v. *Stockton Theatres, Inc.*, 32 Cal.2d 53, 65 [195 P.2d 1].)

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1964. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.