[Civ. No. 885.   Fifth Dist.   Jan. 31, 1968.]

THERESA GILBERT, as Administratrix, etc., Plaintiff and Appellant, v. SACRAMENTO UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

Abbott, Karlton & White and Lawrence K. Karlton for Plaintiff and Appellant.

Rust & Hoffman, Robert Hoffman, Ellis J. Horvitz and David A. Tallant for Defendant and Respondent.

CONLEY, P. J.—The administratrix of the estate of Rose Marie Gilbert sued for damages on behalf of the heirs of the decedent, resulting from her death; the little girl was only 6 years old; she was a pupil at the Washington Elementary School in the Sacramento Unified School District. She was killed on her way home from school when she crossed the track of the Western Pacific Railroad on "I" Street between 19th and 20th.

The amended complaint contained five causes of action: the plaintiff sued the Western Pacific Railroad Company, two of its employees, the City of Sacramento, the Brighton Sand and Gravel Company, and a number of fictitious defendants, as well as the Sacramento Unified School District. The second cause of action is directed particularly against the school district. In the complaint, through reference to the allegations in the first cause of action, the plaintiff alleges that she is the administratrix of the little girl's estate and the mother of the decedent; that the Western Pacific Railroad Company is a California corporation and that J. R. Pittman, J. A. Grubbs and several fictitious defendants were its agents at the time of the fatal accident; that Western Pacific Railroad Company operated its trains on a track which ran in a general northerly and southerly direction on "I" Street, a public street, of the City of Sacramento. The second count further alleges that the Sacramento City Unified School District is a duly organized school district under California laws, that Washington Elementary School was operated by the district, that Doe IV was a teacher at said school, and that Rose Marie Gilbert, "a child with less than average understanding and development for children of her age," who had been placed in a special class for slow students, was one of her pupils.

The amended complaint continues:

"6. That on or about February 5, 1965, and for a long time previous thereto, the paving and street between 20th and 21st Streets where those on 'I' Street would cross said tracks was in a broken and otherwise dangerous condition and defendants, and each of them knew or ought to have known of said condition.

"7. That on or about February 5, 1965, defendants, and

each of them knew, or ought to have known, that decedent crossed said railroad tracks at the place heretofore alleged.

"8. That defendants, and each of them, knew or ought to have known, that at precisely the time and place that decedent would cross the tracks as heretofore alleged, defendant WEST-ERN PACIFIC RAILROAD COMPANY would have a train scheduled to cross at the very same time.

"9. That defendants, and each of them, knew that decedent and many other children crossed said tracks at the time and place heretofore alleged and had previously been urged to change the boundaries of various schools to obviate the necessity of children crossing said tracks.

"10. On or about February 5, 1965, defendants and each of them negligently managed, maintained, operated, and supervised said school and said district and the students therein, including, but not limited to, permitting said decedent to leave said school and cross a railroad track, which was otherwise unguarded, at precisely the time and place wherein a train would be passing, and across a set of tracks which defendants knew or should have known were inherently dangerous and especially in regard to decedent's mental condition, and in failing to retain said decedent and others in her condition, status and circumstance within said school until safe to release same, and had so negligently arranged said school boundaries after actual notice of said dangerous conditions.

"11. On February 5, 1965, as a direct and proximate result of said negligence, acts or omissions of defendants heretofore alleged and otherwise, ROSE MARIE GILBERT was struck by a railroad train, and died.

"12. Immediately prior to death, decedent was a minor person age six (6) years, in good physical condition, and was a faithful and dutiful daughter and sister."

Damages in the sum of $250,000 are claimed on behalf of the heirs and it is further alleged that previous to the filing of the instant complaint, application to the superior court for leave to file a late claim was granted.

The third cause of action charges negligence of the City of Sacramento in the maintenance of its streets; the fourth cause of action alleges that the city and Brighton Sand and Gravel Company, which allegedly was hired by the city to remedy the defective streets, were negligent as to the repair. The fifth cause of action is devoted to a charge that the City of Sacra-

mento and a fictitiously named repair company were negligent in connection with a failure properly to repair "I" Street; the tenor of the entire amended complaint is that the negligence of all of the defendants proximately caused the death of the little girl.

A general and special demurrer to the amended complaint was filed by the Sacramento Unified School District, which was sustained. The plaintiff did not see fit to file a second amended complaint and, in due course, the action was, consequently, dismissed as against the defendant Sacramento School District. While the case is not terminated against the other defendants, this ruling finally eliminated the case against the district, thus giving as to that defendant the present right to appeal. (*Rocca* v. *Steinmetz,* 189 Cal. 426 [208 P. 964] ; 3 Witkin, Cal. Procedure (1954) Appeal, § 12, pp. 2153-2154.)

■ The judgment must be affirmed unless there was a duty on the part of the school district to exercise due care in connection with the period when the pupil was using the public street to go from the school to her home. We find nothing in the statutory law which requires that the district exercise such care to conduct or supervise school children in going to or from their homes. No statute or code section says explicitly that a school district must see to it that every pupil safely returns to his parents' dwelling house at the end of the school day, or that the school must supervise the safety of pupils in the morning as they come from their homes to the school. There is another situation which requires the exercise of due care by the school district, that is when, pursuant to discretionary authority, the district elects to transport children to and from their homes. (Ed. Code, § 16801; *Girard* v. *Monrovia City School Dist.,* 121 Cal.App.2d 737, 743-744 [264 P.2d 115].) In those circumstances, in connection with the use of buses, the district, of course, must exercise proper care in carrying out the duty which it has assumed. There is nothing of the kind in the present situation. On the contrary, there is no showing whatsoever that the district has assumed a duty in connection with the transportation of the children.

*Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272 [40 Cal. Rptr. 812], correctly sets forth the law with respect to the absence of any duty on the part of a school district in the circumstances shown by the present record. In that action, a 5-year-old boy had been struck by an automobile while crossing

a public street on his way to the kindergarten. The school building was located on Howe Avenue, 500 feet south of its intersection with El Camino Avenue, a major traffic artery. The injured boy lived on the other side of El Camino and had to cross the street in going from his home to the school. The traffic on El Camino Avenue was at its height at 8 a.m., at noon, and at 5 p.m. each day; at those times, kindergarten pupils had to cross El Camino to reach school before and after morning sessions. There were electric signals at the intersection. Other school children had been hit by automobiles at the intersection in question and other nearby crossings; these facts were known to the school officials, who told the students, including David, to cross the main traffic artery only at this particular intersection. Before David had entered kindergarten, there had been a safety patrol supervising the intersection, but it had been withdrawn over the protest of a parents' organization. David was seriously injured when hit by an automobile as he crossed El Camino Avenue at noon; it was alleged that the injury was caused by the negligent driving of the operator of the automobile and by negligence of the school district in failing to provide protection to the boy and to other pupils. The opinion in the case pointed out that an indispensable condition of liability for negligence is that a duty of care be owed to the person injured, and that this is a question of law for determination by the court. The opinion quoted from *Raymond* v. *Paradise Unified School Dist.,* 218 Cal.App.2d 1, 9 [31 Cal.Rptr. 847], which holds that a school district is under no legal duty to transport its pupils between home and school. The opinion also states that statutory duties and powers of school districts relative to the protection of pupils' health and safety are contained in sections 11701 to 12081 of the Education Code, and do not impose upon school districts "a statutory obligation to supply traffic protection to pupils en route between home and school." (See also: *Kerwin* v. *County of San Mateo,* 176 Cal.App.2d 304 [1 Cal.Rptr. 437]; *Girard* v. *Monrovia City School Dist., supra,* 121 Cal.App.2d 737.)

In addition to deciding that the school district owed no duty to transport pupils safely from the school to their homes on the ground of common law, the *Wright* case, *supra,* 230 Cal.App.2d 272, also noted that under the Governmental Tort Immunity legislation passed in 1963, which exempts public employees and public entities from liability for acts or omis-

sions resulting from the exercise of discretion (Gov. Code §§ 815.2 and 820.2), there was no liability on the part of the district or any of the teachers or administrators, because the decision to supervise or not to supervise the intersection was discretionary on the part of the school district. Consequently, because of the fact that to provide such supervision was wholly a discretionary act on the part of a school district, the school did not owe the duty. (See Gov. Code §§ 815.2, subd. (b) and 820.2; *Heieck & Moran* v. *City of Modesto,* 64 Cal.2d 229, 234 [49 Cal.Rptr. 377, 411 P.2d 105]; *Miller* v. *Hoagland,* 247 Cal. App.2d 57 [55 Cal.Rptr. 311].)

If there is to be imposed on school districts the duty of exercising due care to transport or otherwise to see to the safety of all of the thousands of children who attend school from the school building to their home and vice versa, the Legislature should so provide. It seems to us that if this duty should be undertaken, by a revision of the law, the duty doubtless would be universal and would extend to each child in the district; the cost of proper supervision would be stupendous, and the passage of such a law would replace the duty which parents now owe to see that their children get to school and back safely.

It should not be forgotten that the alleged active negligence in the present case was claimed to be on the part of the railroad company and the city and contracting repair companies in failing to see that the intersecting streets were in proper condition. The school was allegedly responsible only in a negative way (nonfeasance) and, generally speaking, there is no liability of a party in such a situation for the active negligence (malfeasance) of third persons unless there is a law setting up a duty of care on the part of the school district or a voluntary assumption of duties of a discretionary character. (*Richards* v. *Stanley,* 43 Cal.2d 60, 65 [271 P.2d 23]; *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272, 277.)

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.