[Civ. No. 6486. Fourth Dist. Sept. 22, 1961.]

ANIBAL GALLEGOS, Appellant, v. UNION-TRIBUNE PUBLISHING COMPANY (a Corporation), Respondent.

Crittenden & Gibbs and Philip Crittenden for Appellant.

Gray, Cary, Ames & Frye, James W. Archer and Eugene Freeland for Respondent.

SHEPARD, J.—This is an appeal from a judgment of nonsuit in a libel action.

## FACTS

Plaintiff brought this action for damages for alleged libel in certain articles concerning a murder at Mexicali, Baja California, Mexico, published by defendant in its newspapers on September 4, 5, 6 and 7, 1956. The complaint contains three causes of action, but each is grounded on substantially the same type of material. (See note 1 below for pertinent portions of publications complained of.) The articles also refer to other details from other sources of information not

Note 1: September 4:
"Marquez Sanchez, was shot down by a gunman in a cafe, the Loncheria Baja California, at the corner of 4th St. and Baja California Ave. at 9 P. M. Sunday as he sat eating with four friends, according to Anibal Gallegos, assistant district attorney, of Mexicali.

"A woman witness, whose name was withheld by police, identified the gunman as Jose Trinidad Hernandez Rodriguez, Gallegos said. Gallegos identified Rodriguez as a former bodyguard for Maldonado.

"Rodriguez was accompanied by two other former bodyguards for the governor, according to Gallegos. He said they were identified as Benigno Rodriguez, father of Hernandez Rodriguez, and Espiridion Licea. . . .

"Witnesses to the shooting are Jose Quinones, a newspaper reporter; Hector Arvisu, Jose Luis Villavicencio, and Ruben Zamudio, Gallegos said.

"Gallegos said witnesses gave this description of the killing:

" 'The three gunmen entered the lunchroom. Hernandez Rodriguez

here under dispute, such as the State Judicial Police, the Acting Governor of Baja California, the Mexicali Police Chief, the newspaper Excelsior of Mexico City, the order of Governor Maldonado that the killers must be captured "at any cost," and that people must be made to respect law and order; and the fact that Maldonado had several weeks previously announced the discharge of the three bodyguards.

At the opening of the trial, counsel for plaintiff made an opening statement. At the close thereof defendant moved for nonsuit, and certain deficiencies in the statement were

---

walked up to Marquez Sanchez, placed a pistol against his chest and shot him through the heart.

" 'Sanchez, a heavy-set man, fell to the floor. Hernandez Rodriguez grasped his hair and attempted to raise him to make sure he was dead.

" 'One of the other two gunmen held the customers in their places with another gun.

" 'The killer then turned and walked from the lunchroom, laughing.' . . .

September 5:

". . . Anibal Gallegos, assistant district attorney in Mexicali, reported witnesses said Jose Trinidad was the man who fired the shot that killed Marquez.

"Gallegos said that Benigno Rodriguez, father of Jose, stood guard at the door of the restaurant in which the slaying occurred and, while Licea held the victim, Jose pressed the gun against the chest of Marquez and pulled the trigger. . . ."

September 6:

". . . Anibal Gallegos, assistant state attorney in Mexicali, said formal charges will be filed against Jose Trinidad Rodriguez today.

" 'There is enough evidence to warrant holding him for investigation,' Gallegos said.

"The attorney said witnesses to the crime also will be called on today to try to identify the other gunmen who took part in the killing of Marquez. Gallegos said three suspects were detained. Rodriguez' father, Benigno, and Licea were two of them but Gallegos would not disclose the name of the third."

September 6:

". . . Anibal Gallegos, assistant district attorney, said the suspect is Jose Trinidad Rodriquez, 28, a member of a group known as Los Chemitos, Maldonado's former bodyguards

"Rodriguez surrendered after the police arrested his father, Benigno, 49, in Mexicali, and Epiridion Licea, 34, near Tecate Tuesday. A third man, Angel Mejia Melendrez, was seized in Mexicali yesterday, Gallegos said.

"The father and Licea also were named as members of Los Chemitos. Licea has a commission as a corporal of Tecate state judicial police, Melendrez is a former Mexicali municipal policeman, according to Gallegos. . . .

"Rodriguez was identified as the killer by four men and a woman who witnessed the killing, Gallegos said. . . ."

September 7:

". . . in Mexicali, assistant state attorney Anibal Gallegos indicated that Licea, who is also a state policeman, had established an alibi for himself. He was in the Tecate area at the time of the crime. . . ."

pointed out and discussed by the court and both counsel. The court denied the motion for nonsuit without prejudice, for the purpose of allowing plaintiff's counsel to enlarge upon the opening statement. Plaintiff's counsel then made additional statements.

In general essence the opening statement, as thus enlarged, supplemented by extended discussions between counsel and the court and by plaintiff's complaint, shows that plaintiff represented that he intended to prove that plaintiff on the dates of the publications complained of, was an *Agente del Ministerio Publico* (similar to the position of district attorney in California) in Mexicali, State of Baja California, Mexico; that at said time plaintiff aspired to the position of judge and the Governor of Baja California then intended to appoint plaintiff to the position of judge; that the publications complained of attributed to plaintiff certain statements of fact relating to developments in an investigation being then conducted by plaintiff concerning a murder that had allegedly been committed on the person of the publisher of a newspaper in Mexicali; that the law of Mexico prohibited plaintiff from making such statements; that defendant's publications that plaintiff had made such statements were false; that defendant, in making such publications was not activated by malice toward this plaintiff but was activated by a malicious intent to hurt Braulio Maldonado, the Governor of Baja California; that as a result of the publications plaintiff's name was stricken from the list of proposed judicial appointments, with consequent damage to plaintiff; that a retraction was demanded by plaintiff of defendant, and refused.

At the close of this second statement, defendant again moved for nonsuit on the ground that even though proved, the offered proof would not support a judgment in favor of plaintiff. Defendant pointed out in this second motion, as had been done in the first motion, that the law of Mexico governed the substantive rights of the parties; that under the laws of Mexico *malice toward the plaintiff* was an essential ingredient of plaintiff's pleading and proof, and that the statements attributed to plaintiff were not, on their face, libelous. Discussions between the court and plaintiff's counsel again made clear at this point that plaintiff made no claim that the details of fact contained in the publications regarding the facts of the investigation were untrue, his claim being merely that defendant improperly attributed its source of information as this plaintiff. It was also again made clear that plain-

tiff would introduce no proof, and would not contend, that defendant entertained or was activated by any malice toward plaintiff.

After extended discussion of counsel, advice from several witnesses as to the law of Mexico on the subject of libel and regarding the alleged prohibitions against publication of information by an *Agente del Ministerio Publico,* and considerable independent research on the law of Mexico, the trial court came to the conclusion that the facts set forth by the opening statement of plaintiff would not, if proved, support a judgment for plaintiff, and granted the motion for nonsuit.

## Nonsuit

The granting of a motion for nonsuit is authorized by Code of Civil Procedure 581c at any time after plaintiff has completed his opening statement. ▮ "Such judgment will be affirmed if from all the facts alleged in the complaint and stated by counsel and all the favorable inferences to be deduced therefrom, it is plainly apparent that a case cannot be maintained by the plaintiff." (*Paul* v. *Layne & Bowler Corp.,* 9 Cal.2d 561, 564 [1] [71 P.2d 817].)

▮ Thus, even though the complaint be legally sufficient as against demurrer, when the opening statement by plaintiff of the probative facts he intends to present makes it perfectly clear that no cause of action exists even after indulging in all favorable inferences in support thereof, the nonsuit should be granted. (*Mendez* v. *Pacific Gas & Electric Co.,* 115 Cal.App.2d 192, 196 [3] [251 P.2d 773].) ▮ Of course, the law favors a trial on the merits, and extreme caution should be exercised by the trial judge on motions for nonsuit. Plaintiff should be given all reasonable opportunity to state such facts as might give plaintiff a right of recovery under his pleadings. ▮ If the situation warrants it, the trial court should allow plaintiff to enlarge on his opening statement so that no meritorious cause will be barred from full hearing merely because of ineptness in the opening statement. (*Rodin* v. *American Can Co.,* 133 Cal.App.2d 524, 534 [12] [284 P.2d 530].)

▮ In the case here at bar, such opportunity was amply given. The trial judge patiently discussed with plaintiff's counsel the various aspects of the deficiencies in the opening statement, and also repeatedly went over particular points of doubt to be sure there was no misunderstanding as to plaintiff's precise contentions and offer of proof. We are satisfied

that the trial court's handling of this problem was eminently fair and reasonable, and not open to just criticism.

## Mexican Law Controls Substantive Issues

There is no substantial disagreement between the parties that the law of Mexico controls the substantive rights of the parties herein. ■ Libel and slander occur where the publication takes place, not in the place where the libelous material originates. (*Howser* v. *Pearson,* 95 F.Supp. 936, 938 [4-5].) ■ It is a general principle of the law of torts that the substantive law regulating the rights and liabilities of the parties is the law of the place where the wrong is alleged to have been committed. (*Victor* v. *Sperry,* 163 Cal. App.2d 518, 523 [2] [329 P.2d 728].)

■ In the case here at bar, the place of the publications complained of was in the State of Baja California, Mexico. The law of that place controls the substantive rights and liabilities of the parties in this action. The court's decision in this respect was correct.

## Judicial Notice of Foreign Law

■ Plaintiff first contends that since the rules of law to be applied in the case at bar were the subject of disputed evidence, the court committed prejudicial error in refusing to submit to the jury the question of what the law of Mexico was at the time of the publications complained of. With this we cannot agree.

Code of Civil Procedure, section 1875, as amended in 1957, provides that courts shall take judicial notice of "4. The law and statutes of foreign countries and of political subdivisions of foreign countries; . . ." Advice and assistance to the court in ascertaining law of which it will take judicial notice is often necessary. Producing this in the form of question and answer to expert witnesses is often indulged in, but such form of procedure is not to be commended. (*Estate of Keig,* 59 Cal.App.2d 812, 819 [9] [140 P.2d 163].) Such material is not "evidence" in the ordinary judicial meaning of that word. (See last two unnumbered paragraphs of said § 1875.) Production of such material by question and answer sometimes misleads even attorneys into believing that what is said by the witness is binding on the court. Done in the presence of the jury, it is likely to mislead at least some members of the jury so that exceedingly careful instructions are necessary to keep the jurors' ideas of what they have heard

within due bounds. The court's own independent study is not infrequently more fruitful than the so-called "evidence." The advice offered to and received by the court is not binding on the court and must not be submitted to the jury for decision. The court's ruling was correct.

▉ Plaintiff further contends that the judicial notice referred to in Code of Civil Procedure, section 1875, applies only when the foreign law is readily ascertainable without expert assistance. Numerous authorities were cited by plaintiff but, without exception, those authorities cited were all decided prior to the change in said section 1875 in 1957. Although correctly decided on the law as it stood prior to 1957, they are no longer controlling because of the amendment in said section. (Witkin, California Evidence, § 46(d), p. 62.) The decision of what the law of a foreign state is has now, by legislative authority, been squarely and unequivocally made the independent responsibility of the judge. The same rule authorizes an independent determination by an appellate tribunal, even though the trial court has received and studied extensive material on the subject and ruled on the matter during trial. (*People* v. *Stralla,* 14 Cal.2d 617, 620 [1] [96 P.2d 941].)

### MEXICAN LAW OF PRINTING

▉ The trial court received extensive material and made independent research to determine the law of Mexico on libel as applied to the case here at bar. The same material that was presented to the trial court has been made available to this court, and this court has also conducted its own research. The essential gravamen of plaintiff's case lies in plaintiff's contention that under the *"Ley de Imprenta"* (Law of Printing) of Mexico the public revelation by a prosecuting attorney of evidentiary material developed in the course of a criminal investigation is unlawful when made prior to the magisterial authorization for formal filing of the charges. He cites no judicial authority whatever for this contention. He contends that the newspaper articles attributing the source of information to plaintiff must have been understood by the public generally as meaning plaintiff had committed an unlawful act. He repeatedly emphasizes in his opening statement that he would not contend that the factual information contained in the questioned publications was false, but only that the statement of the source was false.

We come first, then, to the question of whether or not the actions of plaintiff as represented in the questioned publica-

tions could fairly be considered by the public of Mexico to be a violation of the statute.

That portion of article 9 of the Law of Printing of Mexico upon which plaintiff here relies, as translated, reads as follows:

"It is forbidden:

"I.—To publish the writings or records of accusation in a criminal case prior to publication in a public hearing;

"II.—To publish at any time, without the consent of all the interested persons, the writings, records of accusation and other records which deal with crimes of adultery, attacks on modesty, rape, (sexual) violation and attacks on private life; . . .

"IV.—To publish the contents of writings or files which must be secret by order of the law or by judicial disposition . . ." (See note 2 below for exact copy of statute.)

Dr. William B. Stern, one of the experts called to advise the trial court, pointed out that the error into which plaintiff apparently fell is in the translation of the word *"actas,"* as contained in section I. He suggested that plaintiff has apparently read into section I the word *"acto,"* or *"actos,"* instead of *"actas,"* for only by so reading it could plaintiff's interpretation be arrived at. *"Acto"* and *"actos"* appear to properly connote the official proceeding itself, and not the record thereof. (Velazquez, Spanish Dictionary, 1957; Dictionary of Legal Terms, Spanish-English, English-Spanish, Louis A. Rabb, 1955.) This is in accordance with the interpretation of Dr. Stern, gained from his own studies of Mexican law. Furthermore, since both words are of Latin derivation, the meaning is made doubly clear since *"acta"* in Latin refers to public accounts, ordinances, and particularly to the register thereof; whereas *"acto"* in the connotation here involved refers to the action of the magistrate, an action in a court of justice, or the bringing of an action. (Cassell's Latin-English Dictionary, rev. ed.; Black's Law Dictionary, 1951 ed.)

---

Note 2: (Legislacion Penal Mexicana. Ley de Imprenta, pp. 417, 420.) ART. 90.—Queda prohibido:

I.—Publicar los escritos o actas de acusacion en un proceso criminal antes de que se de cuenta con aquellos o estas en audiencia publica;

II.—Publicar en cualquier tiempo, sin consentimiento de todos los interesados, los escritos, actas de acusacion y demas piezas do los procesos que se sigan por los delitos de adulterio, atentados al pudor, estupro, violacion y ataques a la vida privada; . . .

IV.—Publicar lo que pase en diligencias o actos que deban ser secretos por mandato de la ley o por disposicion judicial; . . .

It will be noted that section IV refers to only those matters already made secret by some other law or by order of court. Section IV does not, of itself, purport to define what is secret.

Nowhere in the publications complained of can we find any suggestion that the information attributed to plaintiff was derived from any secret documents of any kind. Apparently what was said was merely derived from his preliminary oral investigation. As far as the publication was concerned, the investigation had not arrived at the stage of taking and filing of formal depositions before the magistrate. As above noted, plaintiff explicitly stated that he makes no contention and will introduce no evidence to show that the publications were false as to any of the detailed facts contained therein.

## MALICE

 Unlike California, the civil law of Mexico has no direct provision covering libel. The action for libel in Mexico is fundamentally based upon a violation of the *"Ley de Imprenta"* which is a part of the Penal Code. Under the Penal Code, malicious intent is a necessary element. Articles 4, 5 and 6 of said Law of Printing speak of malice as follows:

"Article 4:

"In the cases of the three preceding articles, a declaration or expression is understood to be malicious, when it is admittedly offensive by its own terms, or when the intention of offending is necessarily implied."

"Article 5:

"A declaration or expression is not considered malicious although its terms are offensive by their proper significance, in the cases of exception which the law expressly establishes, and also when the accused proves that the facts imputed to the aggrieved are certain, or that he had well founded motives for considering them true and that he published them for honest purposes."

"Article 6:

"In no case may be considered criminal the critic of a public functionary or agent when the facts stated are certain, and when the appraisal thereof is reasonable and is motivated by them, provided that no injurious phrases or words are used."

The Supreme Court of Mexico has defined malicious intent as "causing a publication with an intent to cause dishonor or discredit to the aggrieved." (*Cancino* v. *Palacios Porfirio*, 42 Semanario Judicial de la Federacion (5. Época) 514

(1934).) On the question of intent the Supreme Court of Mexico states that ''intent is not simply found in the knowledge that the criminal has concerning the illicitness of an act and the will to commit the latter, or the will to act despite the knowledge of committing a crime, but also the will to do damage, the bad intention, malice is required.'' (*Diaz Encinas Sebastian*, 28 Semanario Judicial de la Federacion (5. Época 788 (1930).)

In the only other case cited, the Supreme Court of Mexico held that the criticism of the acts which an individual has performed in his capacity as a public servant has the social interest as its purpose and is therefore not punishable under the law of Mexico. (*Reyes Sirio*, 40 Semanario Judicial de la Federacion (5. Época) 3281 (1934).)

It will be seen that said Law of Printing describes actionable attacks on private life substantially as including any malicious written expression exposing a person to hatred, disparagement or ridicule, or injuring his reputation, or the same type of material against the Mexican nation, its institutions or a Federal entity. Nothing contained in article 3 in any way pertains to the material here under discussion. Article 4 provides that such a publication is understood to be malicious when it is offensive by its own terms or when offensive intention is necessarily implied. Article 35 provides that suits because of libelous attacks on the Republic of Mexico or its entities must be presented by the attorney general.

We can find nothing in the questioned publications which could properly be offensive to plaintiff. He was a prosecuting officer. All that appears in the articles shows that the plaintiff was energetically pursuing his duties as such officer and rapidly and successfully closing in on the persons guilty of murder. The reference to former bodyguards of Governor Maldonado is not claimed to be untrue. Certainly by a fair reading, nothing could be deemed to cast aspersions on plaintiff. Plaintiff is clear in his statements that there would be no evidence that defendant held any malice whatever toward plaintiff personally. We are satisfied that the trial court's interpretation of the Mexican law and of its application to the questioned publication was correct.

## TRANSFERRED INTENT

Plaintiff contends, further, however, that there was malice, in fact, toward Governor Maldonado, and that such malice may be transferred indirectly to plaintiff. With this

we cannot agree. The only libel cases from the Supreme Court of Mexico which have been brought to our attention are the ones hereinbefore cited. In the *Cancino* case it was held that *"intencion dolosa"* (malicious intent) is an essential element of the offense.

We can find no authority, and none has been cited, for the contention that malice can be implied against some one not libeled by the publication and that such third party may become the "party aggrieved." As above noted, there is no tort in the Mexican Civil Code described as libel. Only by an application of article 1910 of the Civil Code of the laws of Mexico can there be an action for libel. Section 1910 forms the basis for an action in damages for an illicit or illegal act. An act for damages then depends on the existence of a violation of the *"Ley de Imprenta,"* but the *"Ley de Imprenta"* clearly requires malice toward the aggrieved.

It may be well to note in passing, also, that as to Governor Maldonado it is only by the use of considerably strained innuendo that anything derogatory of even that official could be deduced. It is not suggested that while in his employ the culprits in the murder case ever committed any nefarious acts. That Governor Maldonado had discharged them is more to his credit than discredit. Nothing said infers or suggests that Governor Maldonado condoned any illegal acts. The publication shows that Governor Maldonado promptly ordered the arrest of the culprits "at any cost." Certainly there is nothing discreditable in this. In any event, we can find no authority for transferred malice.

We are satisfied that the trial court's interpretation of the law of Mexico as applied to the case at bar was correct.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.