[Crim. No. 17237. First Dist., Div. Four. Apr. 2, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
PAMELA A. LA MOTTE, Defendant and Appellant.

## COUNSEL

William M. Balin under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Pamela A. La Motte appeals from an order by which she was admitted to probation after a jury found her guilty of welfare fraud (receiving "aid for a child not entitled thereto" [Welf. & Inst. Code, § 11483]).

The verdict of guilty was based on evidence that appellant had received from the Santa Cruz County Social Welfare Department benefits under the program for aid to families with dependent children (AFDC) although appellant's daughter, whose supposed presence in the household qualified appellant for aid, was actually absent.

Appellant contends that the trial court's failure "to use a jury panel selected by law" denied her constitutional right to a jury trial. The argument is that the jury list for Departments 1 and 3 of the Santa Cruz County Municipal Court reflected a broader cross-section of the community than did the superior court list because the former "was drawn from a voter pool that included many more persons of Mexican or Latin American descent with Spanish surnames . . . , more young people and more low income persons . . . ." Appellant argues that she is entitled to a

*Before Rattigan, Acting P. J., Christian, J., and Drummond, J.†

†Assigned by the Chairperson of the Judicial Council.

new trial because the municipal court list was not used even though it was available.

In *Montez v. Superior Court* (1970) 10 Cal.App.3d 343 [88 Cal.Rptr. 736], it was held that, in an attack upon the composition of a petit jury, "the statistical evidence [of an unrepresentative jury panel], if sufficiently probative, has . . . the effect of making a prima facie case for the attackers, shifting the burden onto the prosecution's shoulders." (*Id.,* at p 348.) ■ This means that appellant has the initial burden of showing that a " 'large and identifiable segment of the community' " had been excluded from the jury list which was used in her case. (See *People v. Spears* (1975) 48 Cal.App.3d 397, 401 [122 Cal.Rptr. 93].) Her contention that the municipal court list includes a *greater* percentage of low-income and minority persons does not establish that the superior court list includes an *insufficient* percentage of the same people. She has thus failed to sustain her burden.

She also argues that the number of eligible jurors had not been estimated in the manner required by section 204 of the Code of Civil Procedure. ■ "As a general rule, errors and irregularities in failing to comply strictly with the statutes in making up a jury list, when there is no resultant prejudice to the parties involved in the litigation, does not invalidate the list." (*People* v. *Hess* (1951) 104 Cal.App.2d 642, 669 [234 P.2d 65]; *People* v. *Langdon* (1976) 54 Cal.App.3d 384, 391 [126 Cal.Rptr. 575].) Appellant has not shown any prejudice as a result of any possible irregularity.

On August 4, 1976, the Santa Cruz County Welfare Department notified appellant that she had received "an overpayment on her AFDC grant from November, 1974, through October, 1975." The county proposed that an "overpayment adjustment" be made in her continuing monthly AFDC payments.

Appellant resisted the restitution demand, and a hearing before a hearing officer of the state Department of Benefit Payments resulted in a determination that appellant had received AFDC overpayments in only five of the months involved (Jan., Mar., Apr., May and June of 1975) and not throughout the entire twelve-month period from November 1974, through October 1975, as the county had contended.[1]

---

[1]The administrative decision was subject to rehearing if requested by either party within 30 days. (Welf. & Inst. Code, § 10960.) The final administrative result was subject to judicial review in a mandamus proceeding, pursuant to section 1094.5 of the Code of Civil Procedure, if commenced within one year. (Welf. & Inst. Code, § 10962.)

At the commencement of appellant's criminal trial two weeks later, her attorney moved "that we pare down the charges here to correspond to . . . [the] . . . administrative finding." The trial court denied the motion and admitted evidence which covered the entire 12-month period alleged in the information.

■ Appellant now contends that the trial court lacked *jurisdiction* "to admit prosecution evidence" pertaining to the months for which the DBP had administratively determined there had been no overpayment. A decision by the DBP is binding on a county welfare department even if it is administratively appealed. (*Taylor* v. *McKay* (1975) 53 Cal.App.3d 644 [126 Cal.Rptr. 204].) From this premise, appellant argues that the County of Santa Cruz did not abide by the DBP's decision to the extent that it prosecuted her on welfare fraud charges from which, as to specified months, the administrative decision had absolved her. The contention has no merit. The County of Santa Cruz is not a party to the criminal case; the charges were brought on behalf of the People of the State of California. (Pen. Code, § 684.) Moreover, even if appellant's argument were correct, the jurisdiction of the trial court would persist with respect to the five months of liability for reimbursement found by the state agency.

Appellant argues that "the prosecution . . . for the seven months for which she received no overpayment should have been barred under the doctrine of equitable estoppel." ■ The application of this doctrine requires (1) that the party to be estopped must be apprised of the facts; (2) that he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) that the other party must be ignorant of the true facts; and (4) that he must rely upon the conduct to his injury. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 597 [130 Cal.Rptr. 91].)

■ Appellant combines the Santa Cruz County District Attorney and its Welfare Department as the "party" to be estopped. This position ignores the fact that the People of the State of California and not the County of Santa Cruz or its district attorney are the plaintiff in the criminal case.

Appellant contends that the court erred "in permitting . . . [her] . . . to be prosecuted for the seven months in which there was no overpayment since it was bound by the Director's decision under the doctrine of

primary jurisdiction." She does not analyze this "doctrine," but argues only that it is to be applied when a claim "raises issues the resolution of which requires the special expertise of an administrative agency" (citing *Writers Guild of America, West, Inc.* v. *F.C.C.* (C.D.Cal. 1976) 423 F.Supp. 1064, 1090.) The *Writers Guild* decision indicates that if special administrative expertise is required, in a civil action, the case "is *suspended* pending *referral* of the issues to the administrative body *for its views.*" (*Id.,* at p. 1090 [italics added].) The decision further states that this rule "is designed to secure uniformity of decisionmaking with respect to regulated industries [citation] and to exploit the expertise of administrative agencies in factual areas ordinarily not considered by the courts. [Citations.]" (*Ibid.*)

The so-called "doctrine" does not appear to have been applied or mentioned in any California decisions; it affords no basis for an attack on the judgment in the present case.

Appellant claims prejudicial error in the following remarks addressed by the judge to the jury after the administrative "fair hearing" background had surfaced in the evidence:

"Ladies and Gentlemen, this is how confusing this gets. We got into this fair hearing business and its difficult to stay out of. There was a fair hearing on this particular case and there are certain facets to this particular thing that probably had to be admitted as to whether Miss [*sic*] La Motte had any intent to defraud here, but I don't want you to get confused in this thing, and I want you to listen carefully to everything I'm going to say.

"There was a determination here that a certain amount of funds had to be refunded and they were for a specific set of alternate months, almost—I think maybe there are a couple together."

A few moments later, the court had this discussion with appellant's attorney:

"Mr. Grueneich: Your Honor, I thought we had agreed that aside from intent to defraud, that the question—

"The Court: I beg your pardon. I thought the understanding was that aside from the intent to defraud that the fair hearing decision would also come in as evidence as to the question of whether or not the child was

entitled to funds, in any event, during certain periods of time or for certain events—"

Appellant argues that these comments, together with "further reference" to the fair hearing on the issue of intent to defraud, were "highly prejudicial in that they created in the jury's mind the impression that the hearing officer had found that . . . [she] . . . had a fraudulent intent when she received overpayments." This contention cannot be sustained.

The court was careful to instruct on the *limited* purpose for which the jury was to consider the "fair hearing" decision. Defense counsel brought up the subject of the "fair hearing" during the direct examination of Gary McNeil, the Director of the Welfare Legal Assistance Center in Santa Cruz County. The prosecutor said later, in the jury's presence, that the administrative decision "did find her [appellant] overpaid for some months and not for others, but . . . it's up to the jury to determine." The court then instructed the jury as follows (italics added):

"Ladies and gentlemen, here's the advice of all this. With all of this—this was a civil proceeding. *Your burden is a heavier one*: To determine whether this was done with the intent to defraud and with all the elements of beyond a reasonable doubt and to a moral certainty. See, here is the problem: Mr. Grueneich wants to accept this for certain determinations which are civil determinations by the referee in that time. Mrs. White wants the matter introduced for the fact that there was a determination that there were overpayments for certain months and all I can tell you is this: *You have got to disregard all of that except to the extent that you feel the regulations are such that there was no intent to defraud or no misrepresentation, and that's it . . .*"

Moments later, the court further stated (italics added):

"[S]ince we got into it this deep, I want to explain to the jury that it's a civil proceeding. *Their burden is a heavier one.* They have to find guilty beyond a reasonable doubt and to a moral certainty, and that *that hearing should be disregarded except to the extent that with it all there was enough confusion here to find that there was no intent to defraud and not enough evidence to find guilty beyond a reasonable doubt.* Other than that, *you should not consider this,* because you can be misled both ways . . ."

These statements by the court, made almost contemporaneously with those of which appellant complains, stressed the possibility that the "fair

hearing" decision could actually serve to raise a reasonable doubt of appellant's guilt. Error has not been shown, and in their full context the court's comments were favorable to appellant. Moreover, there was no objection at trial.

■ Appellant requested an instruction that she could not be found guilty of violating section 11483 unless the jury found beyond a reasonable doubt that *Therese* was "not in fact entitled" to the AFDC funds in question. The court refused this instruction, and did not give one defining the phrase "aid to a child not in fact entitled thereto" as the term is used in section 11483 and in the information. Appellant contends that the court thus failed to instruct upon an element of the offense charged.

The stated basis for this contention is that appellant "may have obtained aid wrongly, but still [have] been entitled to receive it because Therese was entitled to receive it." Appellant thus appears to argue that she was entitled to an instruction to the effect that she could not have unlawfully received AFDC funds so long as Therese was a child whose parent *could* have received them.

In *People* v. *Carlson* (1977) 76 Cal.App.3d 112 [142 Cal.Rptr. 638], the appellant argued that, "in addition to showing that a welfare recipient is not eligible for aid under a specific basis on which it was sought and obtained, the prosecution must prove a negative, to wit, that the recipient was not eligible on any other basis." (*Id.,* at p. 117.) The *Carlson* court rejected this argument as encouraging "welfare recipients who may or may not be eligible on a different basis to make their own unilateral determinations of their own eligibility . . . ." (*Ibid.*)

The same reasoning applies here, where appellant is in effect claiming that an instruction should have been given putting the burden on the People to prove Therese's *non*eligibility for the AFDC funds. Whether or not the child might have been eligible, and a parent consequently eligible with her, the jury was properly instructed on the question whether *appellant* had lawfully received the funds. There was no error.

Appellant contends that she asked "the court for a jury instruction requiring the jury to find . . . [her] . . . innocent of the later months charged in the complaint if they were not convinced beyond a reasonable doubt that . . . [her] . . . activity in those months constituted one course of conduct based on a false representation made earlier." The record does not support this recital, which apparently refers to a discussion at the

*beginning* of the trial in which appellant's attorney mentioned an instruction he "will [would] be requesting" later. What he had in mind at that time is not at all clear, but he apparently meant an instruction to the general effect that a verdict of guilt would require the jury to find that appellant acted with fraudulent intent on the occasion of each and every overpayment she received during the full 12-month period charged. The trial judge expressed disagreement with appellant's theory:

"[A]s far as I can see, this was a continuing problem . . . otherwise, if what you say is true, a person could be prosecuted under your theory for Lord knows how many felonies and I don't think there is any justice in that."

The "instruction" was not thereafter requested. Appellant's contention must be rejected for the latter reason alone, as well as because there was no evidence supporting a supposition that appellant's intent differed from one payment to another.

Appellant asserts that "[i]t came to light during trial that all computer documents relating to . . . [her] . . . welfare status before January, 1975, were destroyed by the Welfare Department." She apparently refers to an occasion when the prosecutor told the court of having just learned that "apparently, the Welfare Department has developed a new policy of going through and cleaning out all computer documents over two years old." Appellant thereupon moved to strike testimony relating to the period covered by the destroyed documents. The court did not rule on the motion, but urged the prosecution to ascertain if the records in question were still in existence. The point did not come up again, the fact was not established, and the motion to strike was not renewed.

Appellant now contends that the testimony should have been stricken pursuant to section 11004, subdivision (g). The contention is without merit because it is not supported by the record and because section 11004, having been enacted in 1977 (Stats. 1977, ch. 869, § 4), did not become effective until January 1, 1978, months after the present prosecution was concluded in the trial court.

In her petition for rehearing, appellant contends that there was no showing of an effective demand for restitution as required by Welfare and Institutions Code section 11483 before a criminal prosecution was

launched (citing *People* v. *McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382]). The challenge is not jurisdictional (see *In re Sands* (1977) 18 Cal.3d 851 [135 Cal.Rptr. 777, 558 P.2d 863]); appellant's failure to present the contention to the trial court resulted in a failure of the record to show whether or not there had been a demand for restitution. Therefore, this court cannot examine the contention.

The order granting probation is affirmed.

A petition for a rehearing was denied May 2, 1979.