[Civ. No. 58822. Second Dist., Div. Two. Dec. 5, 1980.]

ANDREW NICHOLAS, as Executor, etc., Plaintiff and Appellant, v. BEVERLEE A. MYERS, as Director, etc., Defendant and Respondent.

COUNSEL

Robert Guerra, Robert K. Miller, Stephen P. Wiman and Ignacio Cota for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Richard J. Magasin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**FLEMING, J.**—Appeal from the superior court's denial of a writ of mandate compelling the award of Medi-Cal benefits to Mary Olivarez. We affirm.

## I

Medi-Cal, California's Medicaid program, is a cooperative federal-state venture in which the state is partially reimbursed for sums expended for the medical care of individuals who qualify for assistance. (42 U.S.C. § 1396 et seq.; Welf. & Inst. Code, § 14000 et seq.) In order to receive the federal funds, participating states must comply with various federal statutes and regulations. (42 U.S.C. § 1396a.) Among other things, the states must provide benefits to persons (the categorically needy) who are receiving or are eligible for cash (welfare) benefits under either the aid to families with dependent children program (AFDC) or the supplemental security income for the aged, blind, and disabled program (SSI). (42 U.S.C. § 1396a(a)(10)(A).) States which choose to do so may also provide benefits to persons (the medically needy) who, although otherwise qualified for AFDC or SSI, are ineligible for those programs due to excessive incomes or resources. (42 U.S.C. § 1396a(a)(10)(C).) California included the "medically needy" in its Medi-Cal program and established certain eligibility requirements for them. The instant cause involves certain of those "eligibility" provisions: First, an individual applicant, such as the petitioner at bench, is ineligible for Medi-Cal benefits if his or her assets ("property reserve") exceed $1,500 in value. (Cal. Admin. Code, tit. 22, § 50420.) However, an applicant's residence, income producing real property worth $25,000 or less, and certain other items (not relevant here) are not included in the property reserve. (Welf. & Inst. Code, § 14006; Cal. Admin. Code, tit. 22, §§ 50418, 50425, 50427, 50416.) Second, an applicant ordinarily is ineligible if he has transferred property for less than adequate consideration within two years prior to his application. (Welf. & Inst. Code, § 14015; Cal. Admin. Code, tit. 22, §§ 50409, 50408.) It is presumed that any such transfer was made for the purpose of establishing eligibility, and the applicant bears the burden of overcoming the presumption by objective facts. (Cal. Admin. Code, tit. 22, § 50409(b)(2).) This rule is known as the "transfer of assets" rule.

An applicant's eligibility for Medi-Cal benefits is determined by the county in which he resides. (Welf. & Inst. Code, § 14016.)

## II

Mary Olivarez, a resident of Ventura County, became a patient in a convalescent hospital in December 1976, at the approximate age of 75. In March 1977 she transferred two parcels of income-producing real

property to her son and daughter, who paid nothing in return. In May 1977 Olivarez applied for Medi-Cal benefits. Her application was rejected because she had not received any consideration for the property she had transferred to her children. At that time the Social Services Agency of Ventura County (County), which reviewed her application, determined that the total value of the transferred property was $47,000. In June 1977 Olivarez reapplied and her application was again rejected. But this time County informed Olivarez that she would be eligible for benefits if the children reconveyed the property to her. (County also informed her that the property would have to meet the income-producing requirements, but it is undisputed that it did (see Cal. Admin. Code, tit. 22, §§ 50427(b)(2), 50416).) Pursuant to County's advisement, the children reconveyed the property to Olivarez, who then filed a new application. At first, the County denied the new application because Olivarez' property reserve, including that portion of the value of her $47,000 income-producing property in excess of the $25,000 exemption limit, was more than $1500. (Cal. Admin. Code, tit. 22, §§ 50427(c)(1), 50420.) However, Olivarez' daughter proved that the total value of the property was only $24,000 and that it therefore should not be included in her property reserve. (Cal. Admin. Code, tit. 22, § 50427(b)(1).) The County then approved Olivarez' application, and in August 1977 she began receiving Medi-Cal benefits.

In October 1978, as part of its annual redetermination of eligibility, the County discovered that Olivarez' property had been reassessed at $28,000. Because the property's value now exceeded the $25,000 exemption limit, the excess was included in her property reserve, which then exceeded the $1,500 limit for single beneficiaries. Accordingly, Olivarez' benefits were terminated.

After exhausting her administrative remedies Olivarez, by her daughter as guardian ad litem, petitioned the superior court for a writ of mandate ordering the pertinent administrative agencies to set aside their decision that she was no longer eligible for Medi-Cal, and to approve her continued receipt of benefits. On October 19, 1979, the trial court denied the petition for a writ of mandate, but stayed termination of benefits pending appeal. Olivarez died on January 24, 1980. On April 23, 1980, Olivarez' son, as executor of his mother's estate, was substituted as petitioner and appellant herein. For purposes of this opinion, however, all references to "petitioner" will be to Olivarez. Respondent Beverlee Myers is the Director of the Department of

Health Services, the agency responsible for overall administration of the Medi-Cal program.

## III

Petitioner contends that respondent is estopped from denying her eligibility for Medi-Cal because she would not have had the income producing property in her possession in October 1978 for inclusion in her property reserve had not the County advised her in June 1977 to have it reconveyed to her. Respondent notes that if the property had not been reconveyed, petitioner would still have been ineligible for benefits in October 1978 under the transfer-of-assets rule. Petitioner, however, argues that the transfer-of-assets rule is invalid because it establishes eligibility criteria for "medically, needy" applicants which are inapplicable to "categorically needy" applicants, in violation of the controlling Medicaid statute and regulation which require participating states to apply the same criteria to both groups, except insofar as financial eligibility is concerned. (42 U.S.C. § 1396a(10)(C)(i); 42 C.F.R. § 435.401(c).)

Whether California's transfer-of-assets rule conflicts with the controlling federal provisions, and whether it violates constitutional guarantees of equal protection and due process, are issues presently pending before the United States Supreme Court in *Dawson* v. *Myers* (9th Cir. 1980) 622 F.2d 1304, certiorari granted November 3, 1980, where the appellate court upheld California's rule. (Cf. *Caldwell* v. *Blum* (2d Cir. 1980) 621 F.2d 491, and *Fabula* v. *Buck* (4th Cir. 1979) 598 F.2d 869, which struck down similar provisions in New York's and Maryland's Medicaid programs.) Yet regardless of the United States Supreme Court's ultimate resolution of these issues, petitioner's contention at bench must fail, for the facts of this case do not warrant an estoppel. ▇ The doctrine of estoppel is applicable only when the party asserting the doctrine has been injured by his reliance upon some conduct of the party he is seeking to estop. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *People* v. *La Motte* (1979) 92 Cal.App.3d 604, 608 [155 Cal.Rptr. 5].) ▇ To the extent that petitioner herein was injured at all, the injury was caused by her own conduct—i.e., her transfer of the income-producing property to her children, and not by any conduct of the County. Insofar as appears from the record petitioner's transfer of assets was effected by her own volition. County's only involvement was its suggestion that petitioner have the property retransferred to her, a

suggestion which, far from injuring petitioner, actually enabled her to receive Medi-Cal benefits from August 1977 until October 1978. Thereafter petitioner became ineligible for benefits by reason of the increase in value of her income-producing property and not by reason of any transfer of assets rule.

In the absence of any further transfer of property she remained ineligible for benefits. Petitioner's argument seems to suggest the County should have been able to anticipate the United States Supreme Court's ultimate ruling on the transfer-of-assets issue and should have advised petitioner to make, or not to make, a third transfer of assets. The short answer is that estoppel does not encompass necromancy. The ultimate ruling of the United States Supreme Court is presently unknown and unknowable. No estoppel is involved, and the judgment denying the writ of mandate is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied December 24, 1980.