[No. E007428. Fourth Dist., Div. Two. June 28, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIA OCHOA, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*This opinion is certified for partial publication pursuant to rules 976(b) and 976.1 of the California Rules of Court except section II-B.

## COUNSEL

Richard A. Lepore, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TIMLIN, J.—Maria Ochoa (defendant) was found guilty by a jury of one count of welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)), one count of food stamp fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)) and nine counts of perjury. (Pen. Code, § 118.) She was placed on probation for five years subject to certain terms and conditions. She appeals, contending that the trial court erred (1) by refusing to allow her attorney to argue to the jury that she was, in fact, entitled to receive welfare and food stamp benefits, and, therefore, was not guilty of Medi-Cal, welfare and food stamp fraud; (2) by refusing to instruct the jury as to matters related to her claim that she was in fact entitled to receive the benefits she had obtained; and (3) by instructing the jury that the false statements she had made in connection with obtaining such benefits were material, instead of allowing the jury to determine the materiality, if any, of the statements.

After reviewing defendant's contentions, we conclude that nonentitlement for benefits is an element of the crimes of welfare fraud and food stamp fraud, that the trial court erred by removing the element of nonentitlement from the jury's consideration, that this error was not harmless beyond a reasonable doubt, and that therefore defendant's convictions for welfare fraud and food stamp fraud must be reversed. We also conclude that even assuming that the materiality of defendant's false statements was an element of the crime of perjury, and that the trial court therefore erred by instructing the jury as a matter of law that such statements were material, such error, if any, was harmless beyond a reasonable doubt, and that therefore defendant's convictions for perjury must be affirmed.

I

FACTS

Defendant owned a house located at 4929 North Cambridge Avenue, San Bernardino. In May 1985, she leased the property to Mr. and Mrs. Wiederakehr.

In December 1985, defendant applied to the San Bernardino County Department of Public Social Services (DPSS) for Medi-Cal benefits. She disclosed to DPSS the fact that she owned rental property at 4929 North Cambridge Avenue, and that she received $550 per month in rent. The Medi-Cal lead worker who discussed the matter with her gave her a rough estimate that she was over the Medi-Cal property resource limits by about $8,000. One of the factors in her calculation was that defendant owned a house in which she did not reside and her equity in that property exceeded the property resource limits. Based on that fact, her application would be denied. Thereafter, based on information from the tax assessor's office related to the market value of defendant's home, the Medi-Cal office sent defendant a notice of action denying her request for Medi-Cal benefits and indicating that she was over the property limits by $12,851.72.

On February 20, 1986, defendant reapplied to DPSS for Medi-Cal benefits, listing 4929 North Cambridge as her residence address, and stating, under penalty of perjury, that she had moved back into the house which she owned and had previously rented to the Wiederakehrs. She represented that the lease had been terminated.

On June 12, 1986, defendant applied to DPSS for AFDC and food stamp benefits. In the application she stated, under penalty of perjury, that she owned and was residing at the North Cambridge Avenue house. She did not disclose that she was receiving rent from tenants of that house. If she had

done so, it would have reduced the amount she would receive as welfare assistance, assuming she were entitled to assistance.

On November 18, 1986, defendant filled out a second AFDC application under penalty of perjury, because she was adding a child as a dependent. She did not reveal to DPSS her rental income and she represented that she was residing at the North Cambridge house.

On May 20, 1987, defendant sought recertification for aid and represented to DPSS, under penalty of perjury, that the North Cambridge house was her residence but she did not disclose she was receiving rental income from the residence.

Defendant testified that she only told the Medi-Cal in-take clerk in February 1986 that she "hoped" to be residing in the house within three weeks, and that it was the clerk who completed the form showing the house on North Cambridge Avenue as her residence. She also testified she delivered a notice to quit to a little girl at the Wiederakehrs' home, and that she later spoke to the Wiederakehrs about leaving but they refused to leave.

Mrs. Wiederakehr, however, testified that defendant never asked them to vacate the home, that she asked them not to appear as witnesses at the preliminary hearing, and that she asked them to testify that she had asked them to move and that they had refused unless she paid their moving expenses, which was untrue.

Mr. Wiederakehr testified that defendant received mail at the 4929 North Cambridge address throughout their occupancy of the premises, and that she directed the Wiederakehrs to send their rent check to Illeana Massingill. Mr. Wiederakehr testified that they paid defendant rent every month from May 1985 through July or August 1988, and that defendant told them that she was moving to Mexico to be with her husband.

Ruth Matzenauer, a quality review supervisor II for DPSS, who had testified as an expert witness as to welfare regulations in over fifty cases in municipal and superior court, testified that in 1985 and 1986, entitlement for AFDC and food stamp welfare benefits was limited to persons owning real property not exceeding $1,000 net market value without regard for a home used as a residence, and that eligibility for Medi-Cal benefits was limited to persons owning real property not exceeding $6,000 net market value unless the applicant was living in a long-term care or nursing facility. She testified that if an applicant living in such a facility owned real property exceeding the entitlement limit, the applicant could receive aid for up to nine months if he or she signed a lien against the property in favor of the county and then

actively attempted to sell the property by listing it with a realtor and advertising the sale in a newspaper.

Mrs. Matzenauer further testified that in her opinion defendant had been overpaid $12,623.50 in AFDC welfare benefits for the period June 1986 through March 1988, and $1,732 for food stamps for the period June 1986 through February 1988. In arriving at her computations, she considered defendant's not disclosing her rental income during those periods made her totally not entitled to welfare assistance. If defendant had disclosed that income she may have been entitled to some aid but not the amount she was actually paid.

A fraud investigator for DPSS testified that he interviewed defendant and she admitted she provided false information to DPSS but had no other way of providing for her children. She also told him that she knew she would not be entitled to assistance if she stated she owned the North Cambridge house and did not reside in it. She also said that she did not reveal her rental income from the home because she was supposed to be living in it.

Defendant's defense at trial was that there was insufficient evidence that she made false statements and representations with the specific intent to deceive in order to obtain welfare benefits but she was misled by DPSS employees when she made her various applications for benefits. She also asserted as a defense that, at the time of her statements and representations, she was entitled by law to welfare and food stamp assistance.

Habeebah Akbar, a welfare benefit counselor, testified on behalf of defendant and expressed the opinion that a pregnant woman with an infant child and no income would be entitled to AFDC and Medi-Cal benefits notwithstanding her ownership of a residence leased to other occupants. Regarding both Medi-Cal and AFDC benefits, she qualified that opinion by stating that if the applicant received rental income from the residence, she would be eligible if the rent equals the mortgage payments on the residence and the rent is directly paid to the mortgagee. This scenario causes the house to be a nonavailable resource to the applicant. This entitlement would obtain irrespective of the applicant's equity in the residence.

On the People's case-in-chief, Mrs. Illeana Massingill testified she is a friend of defendant and during the period June 1986 and April or May 1988, she received rental checks from the Wiederakehrs and would deposit them in defendant's checking account. She further testified she had checks on that account presigned by defendant and payable to the mortgagee on the North Cambridge residence. When the rent check was deposited, Mrs. Massingill

would mail the mortgage payment check with the payment coupon to the mortgagee. She did this during the period June 1986 to the first of 1988.

## II

### DISCUSSION

A. *The Trial Court Erred by Not Instructing the Jury That Nonentitlement to Welfare and Food Stamp Assistance Is an Element of the Offense of Welfare Fraud Under Welfare and Institutions Code Section 10980, Subdivision (c)*

Defendant contends that the trial court erred by concluding as a matter of law that she had not been entitled to welfare benefits, and therefore further erred by refusing to instruct the jury on the rights of tenants under a lease and on the right to temporary possession of property created by a contract, and by refusing to allow her attorney to argue to the jury that she had been entitled to benefits. ▓▓▓ We need not address these specific contentions because we have concluded that nonentitlement to such benefits is an element of the offenses charged in counts 1 and 2, the existence of which is to be decided by the jury pursuant to proper instructions by the court on the pertinent law regarding this element.

Defendant's contentions are based on the proposition that nonentitlement to welfare is an element of the offense of welfare and food stamp fraud (Welf. & Inst. Code, § 10980, subd. (c)), which element must be proved by the prosecution and presented to the jury for consideration. She contends that removing an element of a crime from jury consideration has resulted in reversible error in other cases, citing *People v. Hedrick* (1980) 105 Cal.App.3d 166, 172 [164 Cal.Rptr. 169] and *People v. Burres* (1980) 101 Cal.App.3d 341, 352 [161 Cal.Rptr. 593], and urges that such an error must be considered prejudicial (and, implicitly, reversible) when such removal relieves the People of their burden of proving, beyond a reasonable doubt, the existence of all the elements of the charged crime, citing *People v. Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302].

The People contend that nonentitlement is not an element of the offense of welfare and food stamp fraud, citing *People v. La Motte* (1979) 92 Cal.App.3d 604, 611 [155 Cal.Rptr. 5], overruled on another ground, *People v. Sims* (1982) 32 Cal.3d 468, 488 [186 Cal.Rptr. 77, 651 P.2d 321], and *People v. Carlson* (1977) 76 Cal.App.3d 112, 117 [142 Cal.Rptr. 638], which cases they candidly admit do not set "forth much analysis of their respective conclusions," although "it appears both recognize that eligibility or entitle-ment to welfare benefits is a collateral matter and that a determination of

eligibility or entitlement, even if incorrect, does not excuse or justify subsequent false statements or representations."

Neither defendant nor the People have directed us to any cases which set forth how one determines the elements of a crime. It seems to be generally accepted, however, that the language of the statute is the obvious source of the elements of the offense. (See, e.g., *Patterson* v. *New York* (1977) 432 U.S. 197, 198-199, 206 [53 L.Ed.2d 281, 284-285, 289, 97 S.Ct. 2319, 2320-2321, 2324-2325].)

■ Welfare and Institutions Code section 10980, subdivision (c) provides for punishment for any person who has, "by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, . . ."

We read the unambiguous language of the statute as setting forth three elements which comprise the crime of welfare fraud: (1) a false statement or representation, impersonation or other fraudulent device; (2) which statement, representation, impersonation or other device results in the obtaining or retention of aid under division 9 of the Welfare and Institutions Code; and (3) which aid was obtained for or retained by one not in fact entitled thereto. Thus, nonentitlement to the aid obtained or received is clearly an element of the crime of welfare fraud.[1]

*People* v. *Carlson, supra,* 76 Cal.App.3d 112, on which the People rely, does not require a different result. In *Carlson,* the defendant was charged with a violation of Welfare and Institutions Code section 11483, the precursor to Welfare and Institutions Code section 10980.[2] Section 11483 made it a crime to obtain aid to families with dependent children (AFDC) for a child not in fact entitled thereto by means of false statement, representation, impersonation or other fraudulent device. Welfare and Institutions Code section 11250 set forth three bases upon which AFDC was available to needy children: (a) death, incapacity or incarceration of a parent; (b) absence of a parent from the home because of divorce, separation, desertion or other reasons; or (c) unemployment of a parent or parents. The defendant had

---

[1] A requirement that the false statement or representation be made knowingly or with intent to deceive or defraud appears to be an element of the crime described in Welfare and Institutions Code section 10980, subdivision (c) (see *People* v. *Camillo* (1988) 198 Cal.App.3d 981, 989, fn. 3 [244 Cal.Rptr. 286]; *People* v. *Faubus* (1975) 48 Cal.App.3d 1, 5 [121 Cal.Rptr. 167]), but because the necessary mental state was not raised as an issue on appeal, we have no reason to so hold.

[2] In 1984, the statutes relating to welfare fraud were rearranged and revised, effective January 1, 1985. The result was to make it an offense to receive, or attempt to receive, aid under not only the AFDC and food stamp programs, but under all aid programs. (Legis. Counsel's Dig., Sen. Bill No. 2171 4 Stats. 1984 (Reg. Sess.) Summary Dig., pp. 520-521.)

applied for AFDC under the "Absent Father Deprivation Program," subdivision (b) of Welfare and Institutions Code section 11250, stating that her children's father was absent from the home.

The absent father program required defendant to report to the welfare department in the event the children's father returned. The evidence showed that the father returned, but that defendant did not report this fact, and continued to receive benefits. When defendant was tried for welfare fraud, her defense was that the father was not present in the home within the meaning of the law. Defendant was convicted under Welfare and Institutions Code section 11483.

On appeal, defendant argued that the prosecution failed to offer any evidence to rebut the "possibility" that she would have been eligible for benefits under subdivision (c) of Welfare and Institutions Code section 11250, because of the father's unemployment. According to the reviewing court, "[Defendant's] argument raises the basic question of whether a person can be convicted of a violation of section 11483 when she obtains aid to which a needy child is entitled, albeit said entitlement is on a basis other than that under which aid is sought. Must the prosecution, as an element of the offense, negate the possibility that a person who applies for AFDC on one basis is eligible on some other basis?"

The reviewing court concluded that the reasonable interpretation of Welfare and Institutions Code section 11483 was that "it punishes obtaining aid for a child not entitled thereto on the basis upon which the aid was sought and obtained and that the prosecution does not have the obligation to prove ineligibility upon all possible grounds. Nor is it a defense to a prosecution for violation of the section to show eligibility upon some ground other than that for which the aid was obtained." (76 Cal.App.3d at pp. 117-118.) Otherwise, the court concluded, it would encourage "welfare recipients who may or may not be eligible on a different basis to make their own unilateral determinations of their own eligibility . . . [,]" thus bypassing the administrative review process.

*Carlson, supra,* 76 Cal.App.3d 112, thus did not hold that nonentitlement is not an element of the crime. Furthermore, it is factually dissimilar. In *Carlson,* the People put on evidence of the element of nonentitlement, i.e., evidence that the father was not absent from the home. The defendant, in turn, presented a defense which consisted of showing that the father was, in fact, absent from the home within the meaning of the law. Defendant did not, apparently, produce evidence of eligibility or entitlement on any other basis than absence, nor did she request an instruction related to eligibility or entitlement which was refused. Instead, she waited until appeal to raise a new theory as a defense, i.e., that the People were required to produce

evidence that she was not eligible under any possible subdivision of section 11483.[3]

Here, in contrast, after the People put on expert witness testimony as evidence of nonentitlement, based on defendant's ownership and use of the house on North Cambridge as an asset, defendant too put on expert witness testimony as evidence of entitlement, which was also based on her ownership and use of the house. Defendant does not contend that the People were required to demonstrate that she was not entitled to welfare benefits on all possible bases; instead she contends that the trial court erred by determining that she was not entitled thereto as a matter of law, by refusing to give the jury an instruction pinpointed to her defensive theory that the house was not available to her as an asset because of the lease agreement with the Wiederakehrs, and by refusing to let her attorney argue that she was in fact entitled to the benefits.

■ The parties' and the trial court's nonrecognition of the underlying issues—whether nonentitlement to welfare assistance is an element of a welfare fraud offense and whether its existence is a factual issue to be decided by the jury—resulted in their failure to fully consider what was involved in making a determination of nonentitlement. Nonentitlement is determined by applying various governmental administrative regulations to relevant facts. What facts are relevant is also determined by reference to the regulations. It is the trial court's duty to determine what the law is, and to instruct the jury on the law, so that the jury can apply the law to the facts, which it determines from the evidence, in order to reach a verdict. The jury should not be presented with conflicting evidence as to what the law is and asked to determine what is the applicable law and what it means.

Here, both sides put on expert witnesses to discuss what the regulations meant and the effect, i.e., nonentitlement or entitlement, of applying the regulations to the facts of defendant's circumstances. This testimony should not have been allowed as evidence, a fact which the trial court apparently realized on some level when it questioned having allowed Ms. Akbar to testify. Instead, the trial court should have determined the applicable law and then instructed the jury on the law regarding all elements of the offenses charged in counts 1 and 2, including nonentitlement, as it normally does in

---

[3] *People* v. *La Motte* (1979) 92 Cal.App.3d 604 [155 Cal.Rptr. 5] also did not reach the issue of whether nonentitlement was an element of the crime. In *La Motte*, defendant was convicted of receiving AFDC for a child who did not live with her. Defendant asked for an instruction that she could not be found guilty unless the jury found that the *child* was " 'not in fact entitled' to the AFDC funds in question." (*Id.* at p. 611.) The trial court refused, and on appeal the reviewing court affirmed, noting that whether or not the *child* was entitled to receive AFDC, the jury was properly instructed on the issue of whether *defendant* had lawfully received the funds. (*Ibid.*)

criminal cases. If the trial court so chose, *it* could have heard outside the presence of the jury the experts' opinions as an aid to its taking judicial notice of the regulations and to its interpreting them. (*Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 664 [136 Cal.Rptr. 203]; see also *Gallegos* v. *Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 797-798 [16 Cal.Rptr. 185].) The fact that testimony was allowed erroneously did not alter this basic rule regarding the different duties of the trial court vis-a-vis the jury.

By way of a petition for rehearing, the People have suggested that, in fact, expert testimony on eligibility requirements and the amount of overpayments may be presented to the jury, citing *People* v. *Wood* (1963) 214 Cal.App.2d 298, 303 [29 Cal.Rptr. 444].

*People* v. *Wood* does not stand for such a broad proposition. In *People* v. *Wood*, defendant was convicted of grand theft, based on the obtaining of welfare benefits via false statements. On appeal, defendant contended that "the trial court improperly allowed witnesses for the Welfare Department to testify as to the eligibility requirements and the amount of overpayments in the instant case." (214 Cal.App.2d at p. 303.) According to defendant, because the Welfare Department was allowed, from its knowledge of the facts, to fix a time period within which the fraud took place and to then calculate the amount of overpayments, the department was allowed to express an opinion which "invade[d] the province of the jury." (*Ibid.*)

The opinion in *Wood*, however, demonstrates that the experts testified before the jury on the proper calculations of overpayments pursuant to the Welfare Department regulations. Their expertise was limited to interpreting the regulations for the purpose of computing overpayments. They expressed no opinions as to the bases provided by the regulations upon which the defendant was entitled to welfare assistance.

In other words, in *People* v. *Wood*, the issue was whether it was error to allow expert witnesses to express opinions as to the *amount* by which defendant had been overpaid without invading the *jury's* factfinding role. The issue was not, as here, whether the People's and defendant's expert witnesses could express opinions to the jury as to the *applicable* regulations regarding the defendant's entitlement to particular forms of public assistance and the *interpretation* of such respecting whether defendant's claimed basis for such entitlement was valid without invading the *court's* duty to determine questions of law. Expert witness testimony regarding welfare regulations is admissible before the jury when the testimony relates to the *application* of the regulations, such as the calculations of overpayments in *Wood*, but is not

admissible before the jury when it relates to the applicability and interpretation of the regulations regarding nonentitlement.

We also decline the People's request, via their petition for rehearing, to set forth the "manner in which the trial court should determine the law and the manner in which the trial court should instruct the jury." Because of their specificity, the People's proposed jury instructions related to the particular regulations at issue below would defeat the purpose of a supposedly "sample" instruction.

■ Having determined that nonentitlement is an element of the offenses with which defendant was charged in counts 1 and 2, and that it must be decided as a factual question by the jury, we must now consider the remaining question: whether the removal of this element from the jury's consideration was error, and, if so, what standard applies in deciding whether the error merits reversal?

■ It is generally accepted that the People have the burden of proving the existence, beyond a reasonable doubt, of each and every element of a crime. (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 725-726 [224 Cal.Rptr. 719, 715 P.2d 680].) Thus, removing the issue of nonentitlement from the jury's factfinding province was error.

■ When instructional error "is equivalent to a directed verdict for the State" or otherwise results in removing from the jury a decision as to the existence of a necessary fact, the usual method of assessing whether the error was harmless, i.e., a weighing of the evidence by the reviewing court, does not apply. (*Rose* v. *Clark* (1986) 478 U.S. 570, 578, 580 [92 L.Ed.2d 460, 470-471, 106 S.Ct. 3101, 3106-3107].) This is because "the error in such a case is that the wrong entity judged the defendant guilty." (478 U.S. at p. 578 [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].)

In such a case, instead of using the usual method of assessing harmless error, the reviewing court must look to see whether, despite the instructional error, "the jury necessarily resolved, although in a different setting, the same factual question that would have been presented" but for the instructional error. (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 158 [125 Cal.Rptr. 745, 542 P.2d 1337].) If it finds that the jury resolved the factual issue in another context, then it can conclude that there was no prejudice to the defendant. (*Carella* v. *California* (1989) 491 U.S. 263, 270 [105 L.Ed.2d 218, 225, 109 S.Ct. 2419, 2423] (conc. opn. of Scalia, J.); *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on another ground, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

 Here, the jury made no other findings, either explicit or implicit, which indicate that it necessarily resolved the factual question of nonentitlement. Its verdicts on counts 1 and 2 were limited to determining that defendant's representations to DPSS were false and that she obtained welfare benefits by means of such false representations. We thus cannot conclude that defendant here was not prejudiced by the failure to instruct the jury that nonentitlement is an element of the crimes of welfare fraud and food stamp fraud, and that it, the jury, was required to find that defendant was not entitled to benefits before it could find her guilty of those offenses. Accordingly, the judgment as to counts 1 and 2 must be reversed.

B. *Defendant Was Not Prejudiced by the Trial Court's Instruction That if the Jury Found That Defendant Made the False Statements as Alleged, Such Statements Were Material Matters Within the Definition of Perjury**

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed as to counts 1 and 2, and affirmed as to counts 3 through 11.

Ramirez, P. J., and Dabney, J., concurred.

A petition for a rehearing was denied July 26, 1991.

---

*See footnote, *ante*, page 1413.